## T. D. DAVIS v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

November 10, 1916.

Nos. 19,914—(57).

**Safety Appliance Act — proof of violation — automatic couplers.**

A violation of the Federal Safety Appliance Act may be established by proof that repeated efforts to work the lever of an automatic coupler, in the manner it is designed to be worked by switchmen in railroad operations, failed to lift the coupling pin.

Action in the district court for Ramsey county to recover $25,000 for personal injury received while in the employ of defendant. The case was tried before Olin B. Lewis, J., who at the close of plaintiff's testimony denied defendant's motion to dismiss the action, and at the close of the trial denied defendant's motion for a directed verdict in its favor, and a jury which returned a verdict for $8,830. Defendant's motion for judg-

1 Reported in 159 N. W. 802.

Note.—For authorities passing on the different phases of the question of the Federal Safety Appliance Act, see notes in 20 L.R.A.(N.S.) 473; 41 L.R.A. (N.S.) 49.

ment in its favor notwithstanding the verdict was denied. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*W. H. Bremner* and *F. M. Miner,* for appellant.

*Barton & Kay,* for respondent.

HOLT, J.

The only question on this appeal is: Does the evidence sustain the finding of the jury that the car, which plaintiff attempted to uncouple when injured, was equipped with a defective coupler in violation of the Federal Safety Appliance Act?

Plaintiff was in the service of defendant as a switchman in its yards at Des Moines, Iowa, and had been engaged in that work for many years previous to June 3, 1915. In the early forenoon of that day he, with a crew, was moving four cars in the yard. It is admitted that defendant was then engaged in transporting interstate commerce and plaintiff was assisting therein. The locomotive was behind, pushing the cars and plaintiff's duty was to cut off the two cars in front when a suitable momentum was reached, so as to let them run in on a side track, the switch of which was being held open by another switchman. In this operation it was necessary to uncouple while the train was in motion. It was moving at the rate of from four to six miles an hour when plaintiff started to work the coupling lever. He was on the right hand side of the train as it was moving and the lever was upon the front end of the rear car of the two between which the cut was to be made. The lever falls short several inches of extending to the side of the car, so it is necessary to reach in between the cars in working it. The lever on this particular car was operated by pushing or bearing down on it. Plaintiff claims that, as he was walking or running along the train, he took hold of the lever with his left hand and made several futile attempts to work it, but that he was unable to thereby lift the coupling pin, and he then went in between to lift it by hand. In so doing he stumbled and fell, resulting in the loss of an arm.

Defendant produced three witnesses, who examined this coupler within 30 minutes after the accident, and they all declare that no defect could be detected in any of its parts, and that it operated properly when the lever was pressed. It is contended that this evidence, when considered

with the physical fact that a simple mechanical contrivance like this coupler, shown to be in good condition and workable a short time after the accident, must have been in the same state at the time thereof, and conclusively established that there was no violation of the Safety Appliance Act, hence defendant should have judgment notwithstanding the verdict. Of course, the burden was upon plaintiff to prove the alleged negligence of defendant by showing that the car was not equipped with such a coupler as is required by the statute mentioned, and that this violation of law proximately caused his injury. This he claims to have done by the proof that repeated efforts to push, press or bear down on the lever failed to uncouple. He is in a measure corroborated in this by a witness, called by defendant, who observed plaintiff's movements just prior to and at the time of the accident. The very fact that a mechanical contrivance fails to work, when a fair attempt is made to operate it in a proper manner, tends to prove either that something is out of order, or else that the contrivance is of faulty design or construction. This coupler, known as the Lathrop coupler, was upon a car belonging to the Pennsylvania line. There is no testimony in respect to the efficiency of this make of couplers. The record is suggestive of the fact that automatic couplers often fail to work, so that it is not out of the ordinary but quite customary for the switchmen to go between the cars to lift the pin with the hand. It is quite true, that when physical facts demonstrate the testimony of witnesses to be untrue a judgment wholly based on such testimony will not be permitted to stand. Larson v. Swift & Co. 116 Minn. 509, 134 N. W. 122; McGlade v. City of Waterloo, — Iowa, —, 156 N. W. 680. But to our minds the examinations and experiments, made by defendant's three witnesses of this coupler after the accident, do not so fully meet the testimony of plaintiff that the jury should be precluded from passing upon the truthfulness and effect of the latter. Each of the three witnesses of defendant admitted that when he first noticed the coupler the pin was already lifted, and that all their experimenting was made thereafter, and when the cars were standing still. The experiments were, therefore, not made under the same conditions under which plaintiff worked. Also, as already indicated, there is no evidence as to how certain the Lathrop coupler is to respond to pressure of the lever under varying working conditions. We take it that a coupler to comply with the act of Con-

gress must be one which, when operated in the manner intended, performs its function under all ordinary conditions under which couplings or uncouplings are made in railroad work. This is the rule announced in Burho v. Minneapolis & St. L. R. Co. 121 Minn. 326, 141 N. W. 300; Popplar v. Minneapolis, St. P. & S. S. M. Ry. Co. 121 Minn. 413, 141 N. W. 798, Ann. Cas. 1914D, 383, (affirmed in 237 U. S. 369, 35 Sup. Ct. 609, 59 L. ed. 1000) ; Nichols v. Chesapeake & O. Ry. Co. 195 Fed. 913, 115 C. C. A. 601. Plaintiff's counsel also cites Chicago, R. I. & Pac. Ry. Co. v. Brown, 229 U. S. 317, 33 Sup. Ct. 840, 57 L. ed. 1204, as determining that failure of a coupler to operate when some force is applied to the lever is proof of noncompliance with the Safety Appliance Act. But the decision was based on a concession to that effect, made by counsel for the railway company, and, perhaps, is not applicable here where there is no such concession. See remark of Justice Pitney in San Antonio & A. Ry. Co. v. Wagner, 241 U. S. 476, 36 Sup. Ct. 626, 60 L. ed. 1110.

The contention is also made by defendant that when plaintiff found that the lever could not be moved by hand, instead of disobeying the rules of the company in going between the cars to lift the pin by hand, he should have mounted the sill stirrup of the car and from there worked the lever with his foot. There is no suggestion in the evidence that these levers are ever operated by foot power, or that they were designed to be operated in that manner.

We conclude that the evidence made it a jury question whether the car plaintiff attempted to uncouple was equipped with a defective coupler in violation of the Federal Safety Appliance Act.

Judgment affirmed.