## FORREST NASH ROBERTSON v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.[1]

April 26, 1929.

No. 27,192.

*O'Brien, Horn & Stringer,* for appellant.
*Tautges, Wilder & McDonald,* for respondent.

TAYLOR, C.

In this action for personal injuries plaintiff had a verdict, and defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff was in the employ of defendant as a section foreman at Beech, Iowa, and was furnished a motor car for use in his work, also a so-called push car to be attached to the motor car for the purpose of carrying materials, but he did not use the push car on the day of the accident. The railroad runs north and south. Plain-

[1]Reported in 225 N. W. 160.

tiff's section was known as the Beech section, and the one adjoining it on the north as the Hartford section. On December 19, 1927, plaintiff's crew and the Hartford crew were jointly engaged in removing old anglebars from the rails and replacing them with new ones at a point about two miles north of Beech. About two o'clock in the afternoon plaintiff with three of his men went to Beech on the motor car for more anglebars. On each side of the car there was a shallow box or tray 12 inches in width and 3 or 4 inches in depth extending lengthwise as a part of the floor, and between them there was an open space without any floor. The anglebars were 24 inches in length and each weighed 35 pounds or more. They were about 4 inches in width with a flange forming the angle about 3 inches in width. Plaintiff loaded them crosswise and two tiers deep on each of those boxes, placing them so that one end rested against the inner side of the box and the other rested upon and projected nearly 12 inches beyond its outer side with no other support. Eighteen or twenty were placed on each box. On the way back, plaintiff and W. B. Green rode on the seat on the left side of the car, Green in front and plaintiff at the rear; and Pedro and Elias Ruiz rode on the right side, Pedro in front and Elias at the rear. Plaintiff himself operated the car. While they were running at the rate of 18 or 20 miles an hour the car was suddenly derailed. They were thrown with such force that all were rendered unconscious. The three survivors tell substantially the same story. This is plaintiff's statement:

"I heard something snap—it sounded like something was breaking, and immediately thereafter the rear end of the car dropped down. I was thrown forward on the car, and the next thing I knew was when I found myself laying ahead of the car and the car was standing crossways and had stopped."

This gives all that any of them knew as to what happened or caused the derailment. The car was standing crosswise of the track with its front wheels outside the west rail and its rear wheels between the rails. Green and Pedro Ruiz, who had been riding at the front of the car, were lying on the track several feet behind

where the car stopped. Elias Ruiz, who was riding at the rear of the car, was lying a considerable distance beyond where it stopped and had struck the frozen ground with such force that he died without recovering consciousness. Plaintiff, who was also riding at the rear of the car, was lying beyond it with his legs partly under it and his head on the left rail. He was severely injured, the most serious injury being a crushing fracture of one or more of the vertebrae of his spine. Green, who seems to have suffered no serious injury, regained consciousness almost immediately, and seeing the condition of his companions hastened up the track and called the men who were at work. The foreman of the Hartford section came with his car and took the injured men to Beech where they were placed on a train and taken to a hospital.

Plaintiff's theory is that the housings or castings holding the rear axle in place were cracked and gave way. Defendant's theory is that the breaking of the housings or castings was caused by an anglebar falling through the opening in the floor between the boxes in such a manner that one end of it came in contact with the axle and the other with a tie.

In support of his theory plaintiff testified that prior to the accident he had noticed a streak of rust on the housing covering the gears in the middle of the axle, and that while lying at the side of the car after recovering consciousness he noticed rust on the edges of some of the broken parts. The broken parts remained exposed to the elements and later were found covered with rust. Plaintiff produced two experts who testified that the rust had affected the broken edges of the iron to such an extent that in their opinion the breaks had existed prior to the time of the accident. As against this testimony defendant produced the men who examined the car immediately after the accident and who testified that the breaks were all fresh and free from rust at that time.

The car and the broken parts were put in evidence, and the parts involved were brought before this court. The rear axle is set in an iron framework. Each end of the axle rests on roller bearings held in place by an iron casting or housing. Something drove this

axle backward with such force that the housings at each end and also the one covering the gear at the center were broken off; that the iron bar forming the rear of the framework was bent backward; that the axle itself was bent; and that a part of the iron framework was firmly wedged within the flange of the right wheel. At the bend in the axle there is a mark on the iron as if something equally hard had struck and scraped it. The anglebars were scattered along the track, but one anglebar was found between the rails about 20 feet farther back than the others. There is a smooth depression on one end of this bar showing that it had been rubbed by something hard. The witness who picked it up says that particles of wood were adhering to the other end. A few feet farther back there was a fresh gouge-like cut in a tie about two inches long and three-fourths of an inch deep. Defendant insists that these facts show that the accident was caused by an anglebar sliding through the opening in the middle of the car in such a manner that one end caught against the axle and the other struck a tie.

Verdicts cannot rest on conjecture. The burden was on plaintiff to show that the accident resulted from defects in the car. It is not enough to show that there may have been defects. The evidence must go further and justify an inference that the accident resulted from the cause alleged rather than from some other cause. If it is equally probable that the accident resulted from some cause other than the negligence of the defendant, there can be no recovery. To warrant a recovery the evidence must furnish a reasonable basis for a finding that the accident is more likely to have resulted from the negligence alleged than from other causes. Nealis v. C. R. I. & P. Ry. Co. 173 Minn. 587, 218 N. W. 125; McNamee v. Hines, 150 Minn. 97, 184 N. W. 675; MacIntosh v. G. N. Ry. Co. 151 Minn. 527, 188 N. W. 551; Alling v. N. W. Bell Tel. Co. 156 Minn. 60, 194 N. W. 313; C. M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 70 L. ed. 1041.

Under the facts in this case it appears more probable that the accident was caused by an anglebar sliding off the shallow box than by defects in the housing of the axle, and the verdict cannot stand.

We think it is apparent from the record that all the evidence obtainable as to the cause of the accident was presented, and therefore the order is reversed with directions that judgment be rendered for the defendant.

STONE, J. took no part.