KATHRYN E. LINDBERG v. GREAT NORTHERN RAILWAY
COMPANY.[1]

February 19, 1932.

No. 28,612.

*A. L. Janes* and *Paul McGough,* for appellant.
*Samuel A. Anderson* and *Russell M. Carlson,* for respondent.

STONE, J.

Under the federal employers liability act plaintiff had a $15,000 verdict for the death of her husband, William J. Lindberg. Defendant appeals from the order denying its alternative motion for judgment or a new trial.

Deceased was fireman on a locomotive pulling a passenger train of five cars bound from Duluth to the Twin Cities on the afternoon of February 25, 1930. At Askov the engine was derailed and Lindberg killed. The straight, level track can be considered as running east and west and the train as west bound. At Askov are two

[1]Reported in 241 N. W. 49.

■■■■■■■■

planked highway crossings 760 feet apart. A rock jammed between the rail and planking at the easterly crossing derailed both front wheels of the locomotive, its other wheels holding the rails for 2,872 feet, where a switch frog completed the derailment. It is said that the front truck normally carried 43,000 pounds of engine weight. Its two pairs of wheels were seven feet apart, center to center. Connecting the front ends of engine chassis and truck frame, at each corner, were two short safety chains to prevent the truck becoming entirely separated from the engine in case of derailment.

The engineer, McGowan, felt "a kind of settling" of the engine when the front wheels first left the rails. He did not consider that anything serious had happened. He did know then there was "something wrong," but felt that only a spring hanger had broken. The engine was running about 47 miles an hour. A service application of air was made, the speed being thereby so reduced that at the point of derailment it was not over 10 or 12 miles an hour. If instead of the service application of brakes an emergency stop had been attempted, the jury could have concluded easily and reasonably that the derailment of the engine would have been prevented; that is, the train would have been stopped before reaching the switch frog, which threw it from the track.

The truck frame was rigid so that any vertical movement of a front wheel would be communicated with little, if any, diminution to that end of the frame. The top of the planking of both crossings was 5½ inches above the ties. The planks were somewhat beveled at the ends. The planks of the east crossing prevented doubtless any instant sinking of the derailed wheels. But at the west end they must have dropped to the ties and ballast, continuing thereon 760 feet to the west crossing. There they would be suddenly thrown upward 5½ inches. That crossing passed, they must have dropped back to the ties, on which they continued 2,112 feet to the switch. Between the latter and the west crossing were several hardwood rail braces, blocks about two inches thick, spiked to the ties and resting against and under the tread of the rail. When the front wheels left the rails, that end of the engine would drop at least

half the distance that the front wheels went down, because the engine rested on the truck through a single bearing, a "cradle casting," at its center.

In the opinion evidence, most of it coming from locomotive engineers, there is disagreement. For defendant, engineer McGowan testified that he observed no threat of danger when his engine hit the rock at the east crossing, nor when he passed it, nor while the front wheels of his engine were running on the ties and over the west crossing. Other of defendant's expert witnesses were of the opinion that there would be no jarring or other alarming sensation resulting from the derailed wheels running on the ties. But two witnesses for plaintiff testified to similar experiences of their own, and that on such occasions they knew at once that something was wrong because of the sudden and extraordinary jolting of their engines. Their opinion was that in any such situation the engineer would know at once that the wheels were off the track. A witness for defendant, Mr. Maher, testified concerning two derailments of engines when he was driving. On the first occasion there was enough of an "unusual jar" to tell him at once that the wheels were derailed. On the second occasion he did not know for a mile and a quarter what had occurred. But, he said, when a derailed wheel hit the end of a bridge guard rail five inches high, "of course, * * * we discovered that the engine trucks was off the track."

The evidence showed no defects in the engine or east crossing chargeable to defendant. The jury were instructed also that under the evidence the breaking of a spring hanger "did not require or make necessary an emergency stop." They were charged finally that plaintiff could not recover without proving by a fair preponderance of the evidence (1) "that engineer McGowan knew that the trucks of the engine were off the track or should, as an experienced engineer, reasonably have known such fact and negligently failed to stop the engine by an application of the emergency air"; and (2) "that if [such] an application of air had been made that the engine would not have overturned."

Upon plaintiff was the burden of proof. The difficult issue is not of causal connection but as to the negligence without adequate

evidence of which recovery would be denied as matter of law. For derailment of the front wheels defendant was not responsible. The determinative question is whether from the evidence there can be drawn a reasonable inference that the engineer knew that the front wheels were off the rails, or should "reasonably have known" it in the exercise of the required care, and negligently failed to stop in the 2,872 feet between the east crossing and the switch, where his engine finally was ditched. Ground for mere conjecture is not enough. There must be basis for reasonable inference. Krell v. Robinson, 173 Minn. 483, 217 N. W. 596. And the inference must be not only that there was negligence, but also that it is more probable that the accident was caused by the negligence than by some cause for which defendant was not responsible. Hurley v. Ill. Cent. R. Co. 133 Minn. 101, 107-108, 157 N. W. 1005; Robertson v. C. R. I. & P. Ry. Co. 177 Minn. 303, 225 N. W. 160. We think plaintiff's case successfully meets the test.

There was imposed upon the engineer a degree of care commensurate with the circumstances and attendant danger. Disaster, the result shows, was imminent. There was mistaken appraisal of the situation, and so an error of judgment, if nothing more. Many of the facts are plain. The front wheels ran on the ties and gravel ballast, except where covered by the crossing planks, for 2,872 feet. Their way was anything but smooth. There was as much lateral movement as the chains at the front end would permit. Probably there was the first drop at the west end of the east crossing, and the reverse upward thrust at the west crossing, followed by the drop at its east end. Remained 2,112 feet within which, the jury concluded, the train could have been stopped and Lindberg's life saved. Putting aside for the moment the 760 feet between the crossings, and even if when the engine reached the west crossing the danger had been realized, the emergency application of brakes which must have followed would have kept the engine on the rails. At least that inference was reasonably open to the jury.

We do not ignore the many circumstances urged in argument for defendant, particularly the silent testimony of the ties and crossing planks. What are said to be the relatively slight scars

left on them were for the jury's weighing. Some of them were indented more deeply than others. Many of the hardwood rail braces were crushed. The extent to which the ballast protected the ties from the flanges of the derailed wheels is a circumstance not to be measured here. That and other like considerations of circumstance must be left where the jury left them.

The law has no exact criteria wherewith to measure the conduct of engineer McGowan—a tried man of much experience—in the emergency disclosed by this case. On such an issue the law invokes the standard set by the behavior of·ordinarily prudent men in the same or similar circumstances. That standard must be applied in the first instance by the trier of fact, in this case the jury. It is a matter of common knowledge that one constantly intimate with a running machine, particularly if he be the operator and charged with the responsibility for its correct functioning, develops an acute sensitiveness to sounds or movements symptomatic of abnormal functioning. To such a person a change of the machine's rhythm or in its vibration or lack of it, so slight as to be unnoticed by a stranger, may and frequently does signify serious malfunctioning and occasionally imminent and great danger. Of such elements is made the general experience of jurors, to which the law perforce appeals. Their judgment prevails if there is in the evidence a reasonable basis for it. They judge not only of the credibility of testimony, but also of the inferences to be drawn from established facts. Wherever the evidence furnishes a reasonable basis for the inferences so drawn and essential to sustain a verdict, it must stand. This, we conclude, is such a case.

Order affirmed.