PETER VARDOLOS v. PHILLIPS PETROLEUM COMPANY.[1]

January 20, 1933.

Nos. 29,133, 29,134.

[1]Reported in 246 N. W. 467.

*Jay W. Smith, T. M. Thomson,* and *Walter Barnes,* for appellant.
*Fred O. Dressel* and *Alphonse A. Tenner,* for respondent.

HOLT, JUSTICE.

Defendant appeals from the orders denying its motions for judgment notwithstanding the verdict or new trial.

Two cases were brought against defendant, one by the father in behalf of his minor son for injuries to him, and one by the father for damages to his automobile used by the son when he was injured. The two actions were tried together and verdicts returned in favor of both plaintiffs. We shall hereinafter refer only to the son's case, calling him plaintiff.

Defendant is a corporation, and on November 2, 1929, was operating a gasolene filling station on the corner of Tenth street and Marquette avenue in Minneapolis. In connection therewith were a grease rack, a wash rack, and two steam racks, the latter inclosed by walls ten feet high but no roof. The entrance was at the southerly side of the inclosure, having two sliding doors so arranged that when opened for one rack the entrance to the other was closed. We are here concerned only with the steam rack to the left as one faces the entrance. The descriptions of the rack given by the different witnesses do not agree in detail. However, this seems sufficiently accurate for present purposes. The rack was over a pit 5 feet deep with steps down the southerly end. On either side of the pit was a runway or track, each one consisting of a 3-inch fir plank 16 inches wide and 18 feet long, the two planks being about 56 inches apart. To the inside of these planks a guard rail, a 2 x 8-inch fir plank 18 feet long, was spiked so as to extend 5 inches above the runway, serving as a guard so the wheels of an automobile driven up for cleaning would not run off into the pit or off on the outer side of the rack. The 18-foot runway planks were placed on blocks laid in cement, so that they were level and about 18 inches above the sur-

face of the ground. Planks 6 feet long, of the same width and thickness as the runway planks, led up from the ground to the level part of the rack. On the inside of these 6-foot planks were guard rails spiked similar to those on the level part, or rack proper, except that they were tapered down at the bottom and rounded off a little at the place where they were joined to the guard rails of the level part so as not to interfere with the under part of a car in passing over the incline onto the rack. Plaintiff's estimates that the rack was from 2½ to 3 feet high and the planks leading from the ground up to the level part were 4 feet long are so clearly out of proportion that no reliance can be placed thereon.

In the early afternoon of November 2, 1929, Theodore Vardolos, called plaintiff, then about 18 years old, attempted to drive his father's car, a Nash sedan, onto this steam rack for a steam cleaning. The left wheels went off the runway, breaking and almost wholly detaching the left guard rail, so that the left side of the car, at least as far as the hubs or angle bars for the running board and fenders, fell into the pit. No one saw him drive up. He testified that Harry Nelson, the person in charge of the station, backed a car off that rack and, after turning around to drive that car away to park it in the yard, motioned Theodore to drive onto the rack; that Theodore did drive the Nash sedan onto the rack and stopped it; that he thought there was too much steam coming from the left, so he concluded to step out on the right runway, opened the right door for that purpose, and, as he placed his foot on the right running board, the left side of the car dropped, throwing him violently with his neck against the steering post, thereby receiving the injuries for which he sues to recover. He estimates that the car did not fall until 15 seconds after it stopped.

We shall not refer to the testimony of Mr. Nelson and of three other men who heard the crash and at once rushed into the inclosure, for we are agreed that plaintiff failed to prove that his slipping off the runway was due to any negligence of defendant. The runways were solid and did not give way. The Nash car was estimated to weigh about 4,000 pounds. There is undisputed testi-

mony that six-ton trucks safely used this rack. The only defect or weakness in the rack to which plaintiff's proof was directed was the fastening of the 18-foot guard rail of the left runway; and that came from a contractor, who testified that he did not see more than four 30-penny spikes in the runway; that the heads of the spikes had pulled through the guard rail; that one end of the latter had split; that it was wet and soft wood. He thought there should have been eight spikes instead of four. There was uncontradicted testimony that the racks were built new six months before this accident; that in addition to the number of spikes used there was a lug screw at each end of the plank, the northerly end of the runway having a bumper, to prevent cars from going farther, into which presumably the lug screw went. But, conceding that there might be a jury question of negligence as to the fastening of the guard rail, we think the proof does not go beyond a mere guess or conjecture that such defect caused the accident. Theodore at one time says that he does not know how he fell into the pit; and then says that he knows the wheels were on the runway and not on the guard rail when the car fell; that he does not know what made the car fall or how it did fall.

As against this vague and uncertain testimony we have these persuasive facts. The car was at rest on a level runway, according to Theodore's testimony, for 15 seconds before it fell, both the front and rear wheels slipping to the right, the rack being level sidewise as well. Cars at rest with all four wheels on a solid level surface do not slip sidewise. Theodore does not claim that he turned the steering wheel to the left. The left guard rail of the incline was intact; hence the left front wheel was not against the left guard rail of the runway at the moment it reached the guard rail which is claimed to have given way; and it is highly improbable that with the wheel so near the rail any considerable side pressure could have been exerted on the guard rail unless the driver had turned the steering wheel in that direction with considerable force, and this he does not claim to have done. Again, if an 18-foot 2 x 8 plank, spiked with four 30-penny spikes and a lug screw at each

end, was pushed so that the spike heads went through and the plank split, one would suppose there would be considerable noise and noticeable obstruction; in fact, the northerly or front end of the guard rail would have swung out so that the driver would have seen it and stopped the car in time to avert the mishap.

There is no reliable testimony contradicting that of most of the witnesses that the southerly end of the guard rail, the one next to the incline, was not entirely detached. It would be contrary to physical law that an automobile at rest, motor not running, all four wheels on the same level, should slide sidewise from the mere disturbance made by the driver in attempting to open and step out of the right door. The theory of defendant is that Theodore drove his left wheels onto the left guard rail, and either the front left was driven off to the right or else the weight of the car carried down the guard rail, not intended to support so great a load, until the hubs or the braces supporting the running board and fenders struck the edge of the left runway. It may be conceded that this theory of how the accident happened is open to the charge that it also may be somewhat speculative, even though there is evidence of the imprint of the threads of tires, seen by three witnesses, upon the top of the left guard rail of the incline and on the nearest part thereto of the guard rail that became detached. However, it is not opposed to physical laws, as is plaintiff's theory. The burden was upon plaintiff to show not only a negligent construction or maintenance but a causal connection between such negligence and the accident. If the facts and circumstances shown do not furnish an inference which amounts to more than a guess or conjecture that plaintiff slid off because the guard rail became detached, no recovery can be had. In our opinion the facts and circumstances supported by physical laws show that the alleged defect did not cause the accident; but the more likely cause was that plaintiff drove onto the left guard rail and thereby caused his misfortune. Nealis v. C. R. I. & P. Ry. Co. 173 Minn. 587, 218 N. W. 125, and cases therein cited are applicable here. The syllabus in the Nealis case is:

"Causal connection between negligence and an accident may be established by circumstantial evidence. Such evidence must be

something more than consistent with plaintiff's theory. The causal connection must be fairly and reasonably inferable from the facts and circumstances actually disclosed by the evidence; it cannot be left to conjecture." To the same effect are Robertson v. C. R. I. & P. Ry. Co. 177 Minn. 303, 225 N. W. 160; Phillips v. C. St. P. & P. R. Co. 182 Minn. 307, 234 N. W. 307.

Upon this record the inference from the facts and circumstances is that the guard rail became detached because the car was negligently driven upon it, and not because of negligence in the manner it was attached to the runway. It is at best a poor and improbable guess that the accident was caused by any negligence of defendant with reference to the construction or maintenance of the guard rail. We do not overlook an allegation of failure to warn plaintiff of the dangerous condition of the rack; but there was no evidence of any defect except as to the left guard rail. Theodore was of such age and experience that he knew as much about an automobile and its operation as a full-grown man. It was broad daylight, no roof over the rack. He thought he could drive safely on the runway. If he missed the runway and drove his left wheels on top of the guard rail, it was due to his own carelessness and not to any negligence of defendant. That the pressure of the left wheels pushed the guard rail out, letting the heads of four 30-penny spikes pass through a two-inch fir plank is, under the facts and circumstances shown by this record, a mere guess and conjecture upon which a verdict cannot be permitted to rest.

The orders are reversed with direction to enter judgment for defendant notwithstanding the verdict.