HARRY A. KIMBERLING v. WABASH RAILWAY COMPANY, a Corporation, Appellant.—85 S. W. (2d) 736.

Division One, July 30, 1935.

704

*J. H. Miller* and *Homer Hall* for appellant.

*Eagleton, Waechter & Yost* and *Roberts P. Elam* for respondent.

706

708

FRANK, J.—Action under Federal Employers' Liability Act (45 U. S. C. A., Secs. 51-59) to recover damages for injuries sustained as the result of an alleged violation of the Federal Safety Appliance Act. [45 U. S. C. A., Secs. 1-8.] The trial resulted in a verdict for plaintiff for $50,000. A *remittitur* of $30,000 was entered and judgment was rendered for $20,000. Defendant appealed.

Plaintiff was in the employ of defendant as a railroad brakeman. The parties were engaged in interstate transportation at the time plaintiff was injured. Plaintiff's claim is that when he attempted to uncouple two cars the couplers failed to operate and he was injured as the direct and proximate result of the failure of defendant to comply with the Federal Safety Appliance Act, which makes it unlawful for a "common carrier . . . to haul or permit to be hauled or used on its lines any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." The charge being that plaintiff's injuries were caused by defendant's violation of the Federal Safety Appliance Act, the case must be determined in accordance with the decisions of the Federal courts which have construed and applied the Federal act.

Contention is made that the burden was on plaintiff to show by substantial, competent evidence that the coupler was defective and that he was injured as the direct and proximate result of such defect. We agree that the burden was on plaintiff to so show, but we do not agree to the further contention made that the plaintiff did not carry that burden.

The evidence shows that a human agency figures in the uncoupling of cars—that is—the cars must be in a position so that the coupling pin can be lifted, and the pin must be lifted a sufficient distance to release the coupler knuckles before the cars will uncouple. The evidence further shows that the pin cannot be lifted so as to release the coupler knuckles if the slack in the train is stretched; that in such a situation it is necessary to back the engine

and train a few inches thereby releasing the tension in order that the coupling pin may be lifted. It was the plaintiff's duty to do whatever was necessary to place the cars in a position so that the coupling pin could be pulled, and to actually pull the pin, then evidence that the cars failed to uncouple under such circumstances, would tend to show that such failure was due to some defect in the coupler. We recognize the rule that the burden was on plaintiff to show not only a defective coupler but also that the failure of the coupler to work was not due to a failure on his part to place the couplers in a position so that the cars would uncouple if the couplers were operating properly. We will examine the evidence in the light of that rule.

At the time in question plaintiff was head brakeman on a freight train going from Decatur, Illinois, to Chicago. The train stopped en route at the town of Bement for the purpose of setting out a car. As the train stopped at Bement, plaintiff got off the engine, went back along the train to the car in question, lifted up on the pin lever and pulled the coupling pin up; that when the lever was released the pin dropped down; that he pulled up again and held it, and gave the engineer a go-ahead signal; that when the engine moved forward the cars failed to uncouple and he was thrown to the track by a jerk of the cars. Defendant argues that plaintiff's evidence to the effect that when the pin dropped down "he pulled up again and held it" indicates no more than he pulled the lever up again, and does not necessarily mean that he pulled the pin up. We do not agree with defendant's construction of this evidence. Besides, plaintiff's evidence on cross-examination clearly indicates what he meant when he said "I pulled up again and held it." On cross-examination he said:

"Q. What did you next do? A. I pulled the pin again.

"Q. That is to say, you lifted up on that lever? A. Yes, sir."

He further testified that he could tell when he pulled the pin up. It is clear from this evidence that plaintiff intended to say, and did in fact say, that he lifted up on the lever and pulled the pin again.

Defendant also argues that there is no proof in the record that plaintiff lifted the pin far enough out of the coupler head to effect an uncoupling. There is no basis to support this argument. Evidence that plaintiff pulled the pin means, if it means anything, that he pulled the pin out of the coupler head. In addition, plaintiff testified, without objection, that he was an experienced brakeman and understood the operation of automatic couplers, and there was nothing he could have done which he did not do to aid and further an uncoupling. Further contention is made that there was no evidence tending to show that the coupler was defective.

We do not agree with this contention. Plaintiff testified that when the pin was pulled up, the coupling devices were then free to separate

if they were working properly. The pin was pulled up, thus placing the coupling devices in a position to separate if they were working properly. Their failure to separate under the conditions shown, tends to show that such failure was due to some defect in, or improper construction of the coupler. Both State and Federal courts hold that the test of the observance of the duty imposed by the Safety Appliance Act is the performance of the appliance. In Henry v. Cleveland C. C. & St. L. Ry. Co., 332 Mo. 1072, 1076, 61 S. W. (2d) 340, 341, we said:

"The test of the observance of the duty imposed by the Safety Appliance Act is the performance of the appliance. A failure of the appliance to work efficiently will sustain a charge that the act has been violated, and render the carrier liable for an injury which results from such failure. The question of negligence in the sense of want of care is not an issue in the case. Where an injury results from the inefficient operation of an appliance, whether or not such inefficiency was due to the negligence of the carrier is wholly immaterial. [Spokane & I. E. Railroad Co. v. Campbell, 241 U. S. 497, 36 Sup. Ct. 683, 60 L. Ed. 1125, 1134; Texas & Pacific Ry. v. Rigsby, 241 U. S. 33, 43, 36 Sup. Ct. 482, 60 L. Ed. 874; San Antonio Ry. v. Wagner, 241 U. S. 476, 484, 36 Sup. Ct. 626, 60 L. Ed. 1110.]"

Defendant does not dispute the correctness of the rule announced in the above-cited case, but contends that it applies to cases where the happening of the event alone proves a violation of the act by a failure of the appliance, but does not apply to cases where the operation of the appliance is controlled or directed by human agencies. Defendant concedes that the failure of cars to couple automatically by impact shows a violation of the act, but contends that the failure of cars to uncouple does not show a violation of the act because (1) the act does not provide that couplers shall uncouple automatically, and (2) because an uncoupling can be effected only by manual exertion and is directed by human volition. It is true that the human element figures in an uncoupling process. It is necessary for the brakeman to place the coupling devices in position to separate, by pulling the coupling pin. The evidence shows that after the pin is pulled, the couplers will uncouple automatically, so far as further assistance from the brakeman is concerned, if they are not defective. Where, as in this case, an appliance is placed in such position and condition that it should operate properly, evidence that it failed to operate under such conditions, tends to show that the appliance is defective. Both Federal and State cases so hold. [Nicholas v. Chesapeake & Ohio Ry. Co., 195 Fed. 913, 115 C. C. A. 601; Pennsylvania Railroad Co. v. Jones, 300 Fed. 525; Davis v. Minneapolis & St. L. Railroad Co., 134 Minn. 369, 159 N. W. 802, certiorari denied, 242 U. S. 650, 60 L. Ed. 545, 37 Sup. Ct. 243; Northcutt

v. Davis, 113 Kan. 444, 214 Pac. 1113.] In the case last cited the facts are identical with the facts in the instant case. There the evidence showed the plaintiff made two attempts to uncouple cars equipped with automatic couplers operated by a lever; those attempts failed because the lever would not hold the coupling pin after it was withdrawn from the socket, and when the lever was released the pin would drop into the socket and couple the cars; that the plaintiff made a third attempt and then held the lever and signaled the engineer to move forward with that portion of the train detached; that the engineer obeyed the signal but the entire train moved and the car which the plaintiff was attempting to uncouple struck him and knocked him under the wheels. There was no evidence of defective couplers or appliances, except that the appliance on the car to be detached did not work when the plaintiff attempted to uncouple the cars. In that case, the court held that proof that the couplers failed to work after the coupling pin had been pulled, tended to show a violation of the Safety Appliance Act and made a case for the jury. We so hold in the case at bar.

Defendant invokes the well-recognized Federal rule that where a plaintiff's case rests upon an inference or inferences, the case must fail upon proof of undisputed facts inconsistent with such inferences. This rule is well enough, but it does not fit the facts of this case. The fact that coupling devices will separate when the pin is pulled, if they are working properly, the fact that the pin was pulled, and the fact that the cars failed to uncouple after the pin was pulled, were all proved by positive testimony. There is only one inference to be drawn from the proven facts, and that is that the couplers were defective. All of the cases, both State and Federal, hold that where it is shown that a mechanical appliance, such as a coupler, fails to function, and it is further shown that such appliance was properly operated by the human agency operating it, such proven facts justify the inference that the applicance was defective. [Authorities, supra.]

Appellant's counsel call attention to evidence which they claim established the fact that the slack between the cars was so stretched that the pin could not have been pulled. We have examined this evidence and find that it does not support appellant's contention. We refrain from discussing this evidence, because such evidence, however cogent, would not destroy the positive evidence of plaintiff that he actually pulled the pin.

Appellant cites numerous cases in support of the contention that proof of the happening of the event does not prove liability under the Safety Appliance Act. Among the cases cited are Robinson v. Chicago & E. I. Ry. Co., 334 Mo. 81, 64 S. W. (2d) 660, and Fryer v. St. Louis-San Francisco Ry. Co., 333 Mo. 740, 63 S. W. (2d) 47.

The difference between the cited cases and the case at bar is that in the case at bar the plaintiff excluded every cause from} which the accident might have resulted except that of a defective coupler. That was not done in the cited cases. The Robison case was a boiler ⁃explosion case. After discussing the failure of the plaintiff's evidence to show the cause of the explosion, the court said:

"An examination of defendant's evidence discloses nothing to supply plaintiff's lack of proof. On the contrary, it contains much to support defendant's contention that the explosion was due solely to the engineer's own failure to keep sufficient water in the boiler, but disregarding this, as we must in ruling the sufficiency of defendant's demurrers to the evidence, the most that can be said of plaintiff's proof is . . . 'the accident may have resulted from any one of several causes, for some of which the company was responsible, and for some of which it was not. This is not enough.' "

In the Fryer case, plaintiff sued for a violation of the Boiler Inspection Act. The evidence showed that the reverse lever on the engine went suddenly and violently forward and injured the plaintiff. The evidence further showed that it was the duty of plaintiff, as engineer, to keep the lever and its appurtenances properly lubricated. Plaintiff's evidence also showed that the sudden movement of the reverse lever could have been caused by improper operation; that is, failure to properly lubricate. No mechanical defect was shown which could have caused the unusual movement of the lever. The judgment below was for plaintiff. In reversing that judgment the court, among other things, said:

"But a plaintiff cannot recover when his evidence not only shows no defect but also fails to show that the unsafe operation of the appliance was not the result of his own improper act, when the circumstances tend to show that such unsafe operation of the appliance would be a natural and usual result of his improper operation."

In the case at bar the evidence shows that the failure of the cars to uncouple was not due to any improper act of plaintiff. The evidence was that the coupler heads should separate when the engine went forward if the coupling pin was pulled. Plaintiff pulled the pin but the coupler heads did not separate. This evidence not only excludes all possible causes of the failure of the cars to uncouple, except that of a defective coupler, but warrants a finding that such failure was caused by a defective coupler. The other cases relied on by defendant are as clearly distinguishable from the instant case as the two we have discussed.

██ It is next contended that the proximate cause of plaintiff's injuries was not a defective coupler.

Defendants call attention to the fact that the negligence charged was the failure of the defendant to have the cars equipped with couplers which could be uncoupled without the necessity of going

between the ends of the cars, and argues that there is no evidence tending to show that there was any necessity of going between the ends of the cars to uncouple them. This argument amounts, in effect, to saying that a trainman cannot recover for injuries resulting from a violation of the Safety Appliance Act, unless, when injured, he was between the ends of the cars attempting to couple or uncouple them. Both State and Federal courts hold otherwise. In Louisville & N. Railroad Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 461, 61 L. Ed. 931, that court said:

"While it is undoubtedly true that the immediate occasion for passing the laws requiring automatic couplers was the great number of deaths and injuries caused to employees who were obliged to go between cars to couple and uncouple them, yet these laws as written are by no means confined in their terms to the protection of employees only when so engaged. The language of the acts and the authorities we have cited make it entirely clear that the liability in damages to employees for failure to comply with the law springs from its being made unlawful to use cars not equipped as required,—not from the position the employee may be in or the work which he may be doing at the moment when he is injured. This effect can be given to the acts and their wise and humane purpose can be accomplished only by holding, as we do, that carriers are liable to employees in damages whenever the failure to obey these safety appliance laws is the proximate cause of injury to them when engaged in the discharge of duty." [See, also, Minneapolis & St. P. Railroad Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 597, 61 L. Ed. 995; McAllister v. St. Louis M. B. T. Railroad Co., 324 Mo. 1005, 25 S. W. (2d) 791.]

The uncoupling to be made was between what the record designates as the first and second coal cars. The first car was the one nearest the engine. The proof shows that plaintiff stood outside the rails and in the clear of the cars holding up the pin-lifting lever with his left hand to prevent the pin from falling back; that he gave the engineer a go-ahead signal with his right hand, then took hold of the grab-iron on the rear of the first coal car with his right hand; that when the cars had moved two or three feet, during which time he had taken one step forward, when he was thrown to the ground by a jerk of the cars, with his left foot on the rail, and the wheels of the second car ran over it; that when cars fail to uncouple under the circumstances shown, there is of necessity a jerk. It appears from this evidence that the jerk was the thing that threw plaintiff to the ground. It likewise appears that the failure of the cars to uncouple was the thing that caused the jerk, and it further appears that the failure of the first and second car to uncouple was the thing that caused the second car to be pulled forward and over plaintiff's foot. Had the uncoupling been made, the second car which ran over plaintiff's foot would not have moved and plaintiff would not

have been injured. Defendant argues that plaintiff's own independent and unnecessary act in taking hold of the grab-iron on the car ahead for the sole purpose of climbing on this car, not being in any way a part of the uncoupling of the cars, was the proximate cause of his injuries. Conceding for the sake of argument that the failure of the cars to uncouple did not cause the jerk, and conceding further that plaintiff's act in taking hold of the grab-iron on the front car was an unnecessary and improper act, and was the thing which caused him to be jerked to the ground, still he would not have been injured but for the failure of the cars to uncouple which caused the second car to be pulled forward and over his foot. The test of whether there is a casual connection between the alleged negligence and the injury is that the facts show that, absent the negligent act, the injury would not have occurred. [Philadelphia & R. Ry. Co. v. Auchenbach, 16 Fed. (2d) 550, 551; Spokane v. Inland E. Railroad Co. v. Campbell, 241 U. S. 497, 60 L. Ed. 1125, 36 Sup. Ct. 683; Southern Pacific Railroad Co. v. Ralston, 67 Fed. (2d) 958; Coble v. St. Louis & S. F. Railroad Co. (Mo.), 38 S. W. (2d) 1031, 1036.] Under any view of the evidence plaintiff would not have been injured but for the failure of the cars to uncouple.

Contention is made that error was committed in the exclusion of the testimony of witness Morrison to the effect that a coupling pin cannot be lifted when the slack in the train is stretched. This contention cannot be sustained for two reasons. In the first place, there was no offer of proof as to what the testimony of the witness would have been had he been permitted to testify. In the absence of an offer of proof, error cannot be predicated on the exclusion of the proffered testimony. [Byam v. Kansas City Public Service Commission, 328 Mo. 831, 41 S. W. (2d) 945, 952.] In the second place, plaintiff, while on the witness stand, admitted the facts sought to be proved by this witness. It is not reversible error to refuse to permit a witness to testify to admitted facts.

Contention is made that the court erred in giving plaintiff's Instruction No. 1. The claim is that the instruction is erroneous in that it required the jury to find for plaintiff because of the mere failure of the cars to uncouple, without requiring a finding that the couplers were defective or that they could not be uncoupled without going between the ends of the cars.

We cannot agree with this contention. The instruction required the jury to find, (1) that plaintiff used all means necessary to accomplish an uncoupling in event the train was thereafter moved, (2) that the train was thereafter moved so that said uncoupling could and should have been made, (3) that said cars failed to uncouple, (4) that such failure was due to the failure of the coupler to operate under the circumstances aforesaid, and (5) that plaintiff was injured as a direct result of such failure. A finding by the jury

of the facts hypothesized in the instruction would be a finding that the coupler was defective. It was not necessary that the instruction require the jury to find that the uncoupling could not have been made without going between the ends of the cars. Defendant is liable in damages if plaintiff's injuries were caused by a defective coupler regardless of plaintiff's position or the work he was doing at the time he was injured. [Louisville & N. Railroad Co. v. Layton, supra.]

█ Further contention · is made that the instruction omits the defense pleaded that the injury was the direct result of plaintiff's attempt to uncouple the cars and giving a signal for the cars to be moved when they and the couplers were not in a position to effect an uncoupling. There is no evidence to support that issue and for that reason it was properly omitted from plaintiff's instruction. For the same reason defendant's requested Instruction D, which sought to submit that issue was properly refused.

█ Contention is made that the court erred in refusing defendant's requested Instruction F. That instruction reads as follows:

"The Court instructs the jury that it was the duty of the plaintiff to use care and caution to observe and learn the conditions and surroundings of the place where he was working and to learn and obey the rules relating to the manner and method of doing such work, and this duty is increased in proportion to the dangers and risks of the employment, and if you believe from the evidence that plaintiff failed to use the care and caution that a reasonably careful man ought to have exercised and would have exercised under the circumstances and conditions shown by the evidence, or that he failed to obey the rules relating to his work, and that he was injured solely as the result of such failure on his part, or as the result of a failure to properly perform his duties, or to properly obey the rules relating thereto, then the plaintiff is not entitled to recover and your verdict should be for the defendant."

It is apparent from a reading of the instruction that it directed a verdict for defendant upon a finding that plaintiff was guilty of contributory negligence. Contributory negligence is not a defense to a case brought under the Federal Safety Appliance Act, and for that reason the instruction was properly refused. [Alcorn v. Missouri Pacific Railroad Co., 333 Mo. 828, 63 S. W. (2d) 55, 61.]

█ It is next contended that error was committed in excluding the evidence of witness Cunningham to the effect that the coupler on the first coal car was in operative condition the next morning after plaintiff was injured. Conceding, without deciding, that the proffered testimony was competent, its rejection cannot be held to be reversible error in view of the fact that defendant was permitted to show the same facts by other witnesses. On the evening of and after the accident, a train crew was sent from Decatur to pick up the train

in question. Two members of that crew testified that in picking up this train they handled both the coal cars in question; that the couplers on both cars were in operative condition; that in handling the train they operated the couplers on both cars and had no trouble whatever in doing so. For the reasons stated, the exclusion of witness Cunningham's testimony, if erroneous, was harmless. [Irwin v. St. Louis & S. F. Ry. Co., 325 Mo. 1019, 30 S. W. (2d) 56; Steffen v. Southwestern Bell Telephone Co., 331 Mo. 574, 56 S. W. (2d) 47.]

The final contention is that the verdict is excessive and was the result of passion and prejudice and for that reason it should have been set aside.

The verdict was for $50,000. The trial court made the following order for *remittitur:*

"If plaintiff will within ten days from date remit the sum of $30,000, defendant's motion for new trial will be overruled; otherwise the same will be sustained on the 15th specification thereof."

The fifteenth specification of the motion for new trial recites that: "The verdict is excessive and the result of passion, prejudice and partiality on behalf of the jurors in favor of the plaintiff and against the defendant."

The plaintiff made the *remittitur* of $30,000, the motion for new trial was overruled, and judgment rendered for $20,000.

Defendant contends that the order of the court reciting that if the *remittitur* was not made the motion for new trial would be sustained on the fifteenth specification thereof, was a finding that the verdict was the result of passion and prejudice, and for that reason the court should have set it aside instead of ordering a *remittitur*. The order was not a finding of bias and prejudice. It was nothing more than an indication of what the court then thought the ruling would be in event the *remittitur* was not made. No such ruling was ever made. Courts may, and often do, change their mind after indicating what a ruling will be, then make a ruling contrary to the one indicated. An analagous situation is where an instruction in the nature of a demurrer is tendered at the close of the evidence in a case, and the court indicates that the instruction will be given, such an indication is not a ruling of the court, and a nonsuit taken under such circumstances is purely voluntary from which no appeal lies. Such a situation was presented in Segall v. Garlichs, 313 Mo. 406, 281 S. W. 693. We there said:

"The record entry here shows that an instruction in the nature of a demurrer had been offered, which 'the court indicated would be given.' Under the repeated decisions of this court a nonsuit, to be involuntary, must be taken as the result of an adverse ruling actually made. In the instant case the court did not actually make an adverse ruling, but merely indicated what the ruling would be; the nonsuit thus taken was voluntary."

In the case at bar, the court did not find that the verdict was the result of passion and prejudice. The order made merely recites, in substance, that the motion for new trial *will be sustained on the fifteenth specification thereof* if the *remittitur* is not made. This was not an actual ruling but merely an indication of what the ruling would be. On appeal, cases must be viewed in the light of what the trial judge actually did, not what he said he intended to do. Not only did the court fail to make an express finding that the verdict was the result of bias and prejudice, but its order overruling the motion for new trial and rendering judgment for the lesser amount after the *remittitur* was made, amounted to a finding that the verdict was merely excessive and not the result of passion and prejudice.

Appellant cites the case of Minneapolis, St. Paul & Sault Ste. Marie Ry. v. Moquin, 283 U. S. 520, in support of its contention that the verdict should have been set aside. In that case the verdict in the trial court was for plaintiff. The defendant moved the court to set the verdict aside on the ground of bias and prejudice. The trial court overruled the motion. On appeal to the Supreme Court of the State, that court reversed the judgment of the trial court, found that the verdict was the result of passion and prejudice, and ordered a *remittitur*. On appeal to the Supreme Court of the United States, that court held, and correctly so, that after the State Supreme Court found the verdict to be the result of passion and prejudice, it should have set the verdict aside instead of ordering a *remittitur*. There was no finding of bias and prejudice in the instant case, and for that reason the cited case is not in point.

It is our province to determine whether or not there is any basis for the charge in the motion for new trial that the verdict was the result of passion and prejudice. Appellant points to no fact or circumstance in the record which it claims was calculated to engender passion and prejudice in the minds of the jury, and from our examination of the record we find none. Appellant rests this contention upon the sole claim that the trial court found the verdict to be the result of passion and prejudice. Our conclusion that the trial court did not so find, leaves no basis for the contention. Plaintiff was seriously injured and the evidence tends to show that if he recovered a judgment, it should be for a substantial sum. In view of the evidence in the case, the amount of the verdict was not calculated to shock the judicial conscience or indicate passion and prejudice. The mere size of a verdict for damages for personal injuries, although it be necessary to reduce it one-half or more, does not indicate passion or prejudice. [Greenwell v. Chicago, M. & S. P. Ry. Co., 224 S. W. 404; Clark v. Atchison & Eastern Bridge Co., 333 Mo. 721, 62 S. W. (2d) 1079; Varley v. Columbia Taxicab Co., 240 S. W. 218; Bond v. St. Louis-San Francisco Ry. Co., 288 S. W. 777, 315 Mo. 987; Spencer v. Railroad Co., 317 Mo. 492, 297 S. W. 353.] Tak-

ing above cases in the order cited, the verdicts were reduced as follows; from $45,000 to $15,000; from $18,800 to $8800; from $40,000 to $18,000; from $85,000 to $35,000; from $41,375 to $10,000. Where, as here, there is no substantial basis for a charge of bias and prejudice and plaintiff consents to a reasonable *remittitur,* defendant cannot complain though the judgment is based on a verdict, the original amount of which was excessive. [Dees v. Skrainka Construction Co., 320 Mo. 839, 8 S. W. (2d) 873.]

As a result of plaintiff's injuries, his left leg was amputated between the knee and ankle. Plaintiff claims that he is entitled to recover for other conditions resulting from the loss of his limb. However, we need not discuss the extent of the injury because defendant does not claim that the judgment as rendered for the amount remaining after the *remittitur* was made is excessive.

The judgment should be affirmed. It is so ordered. All concur.