SYLVESTER I. BAUER v. MILLER MOTOR COMPANY.[1]

May 8, 1936.

No. 30,839.

*Robb & Rich* and *Wilson & Wilson*, for appellant.
*John E. Regan*, for respondent.

[1]Reported in 267 N. W. 206.

I. M. OLSEN, JUSTICE.

Defendant appeals from the judgment in favor of the plaintiff.

Plaintiff was a prospect for the purchase of an automobile. Defendant is a dealer, selling automobiles at Mankato in this state. One Ackman was a salesman employed by defendant. On September 20, 1934, Ackman took a 1934 model Plymouth car, which was owned by defendant and had been used at times for demonstration. Plaintiff agreed to go out with Ackman and try out the car. It was agreed that they would drive from Mankato to New Ulm and back. The distance from Mankato to New Ulm is some 28 or 30 miles. Ackman drove the car until they were out of the city and up over the river hill west of the city. From then on plaintiff drove the car. When they had reached a point about two miles from New Ulm the car, driven by plaintiff, collided with a truck coming from the opposite direction, went off the road into the ditch, and tipped over. Plaintiff suffered some injuries and recovered a verdict of $475 on the ground of negligence on the part of defendant. Defendant's motion to direct a verdict in its favor had been denied, and a subsequent motion for judgment notwithstanding the verdict was denied. Judgment on the verdict was thereafter entered, and this appeal taken.

Defendant claims error in two respects: (1) That the evidence does not prove actionable negligence and the finding of negligence rests on speculation and conjecture. (2) If the evidence made the question of negligence a fact issue for the jury, then the evidence fails to show any causal connection between the negligence claimed and the accident.

The claimed negligence is that the car was equipped with defective shock absorbers, the only defect claimed being that they were dry and did not operate. There is no claim that there was any mechanical defect in them. The primary purpose of shock absorbers is to check the bound and rebound of the car springs and so minimize the up-and-down jolting of the body of the car in going over rough places in the road. The object is to make easy riding in the car and prevent the bouncing of the persons riding therein. This car was equipped with the ordinary type of hydraulic shock absorbers, now

commonly used. These absorbers are connected directly with the springs and control the up-and-down movements thereof. There is a small chamber, containing an oil or liquid, which cushions and retards the up-and-down movement of the part of the absorbers connected with the springs and so retards the spring action. When there is no liquid in this chamber the absorbers do not operate and the car is in the same condition as if it had no shock absorbers. This car was also equipped with stabilizers or sway bars, which control and minimize the sidewise sway of the car body in turning or going around corners or curves. The shock absorbers have no connection with these sway bars and are not connected in any way with the steering apparatus of the car.

The only two persons who were present at the accident and testified as to how it happened were plaintiff and his witness Ackman. Plaintiff testified as follows:

Q. "What happened at that point?

A. "Well, I saw a truck coming. I knew I would have to turn off to the side for the truck anyway, I just started turning the car a trifle to get out of the way. When I did that the front part, I don't know just what happened, but the front part just started weaving and bobbing up and down, jumping up and down, I didn't know what was the matter, whether it was the shock absorbers or what it was. * * *

Q. "Tell the jury what happened when you turned that car out and what happened to the car?

A. "It just started bounding from one side to the other, it seemed the front was all loose, that's the way it seemed to me, the front of the car was just going up and down this way, first on one side and then on the other, then the wheels started weaving. I tried to hold it and straighten it, I couldn't any more.

Q. "What happened then?

A. "The truck came along at that time, that's what I was passing at the time. The front fender of our car must have hit the back point of the truck, I hit the back point of the truck, we went into the ditch and rolled."

Ackman testified that he did not see the truck until it was right in front of them. His testimony as to how the accident happened is as follows:

Q. "What sensation if any did you first sense in the handling of the car?

A. "Well, this car started to weave, the body she felt just like the thing was anchored on a swivel in the middle of the body, the body on account of the swaying naturally would pull over from one side to the other.

Q. "Did Ole at that time say anything to you about it?

A. "Yes, he did he said I can't—

Mr. Wilson. "Wait. You have answered the question. I object to anything further.

Q. "What did he say to you?

Q. "You may answer.

A. "Mr. Bauer said something like this, 'I can't straighten this car out,' or, 'I can't hold it,' or words to that effect, and the car went over.

Q. "Did you observe as to how the cars came in contact with one another, the truck and the car?

A. "As I saw the truck my opinion would be I think the truck was driving about on the yellow line, that is, in the center of the road, you know that dividing line they have in the center of the road. I think the truck was a little bit toward the right, and Mr. Bauer pulled out just a little bit to avoid that truck, as I saw it.

Q. "Just what you saw is what we want.

A. "I was talking to Mr. Bauer and as you would, I would glance forward and sideways, so that's the way the accident looked to me.

Q. "I wish you would talk louder.

A. "It was toward the rear end of the truck, it was the rear end of the truck that slapped the left front fender on the Plymouth, then the car rolled over.

Q. "At that time what was the action, if any, of this car?

A. "As I said, it was swaying back and forth, like it might be anchored on a swivel, something like that."

He further testified that on two previous occasions when he was driving the car he had some trouble with it; that it had swayed in turning and leaned over "like it was anchored on a swivel." He testified that he told Mr. Brown, defendant's sales manager, about having trouble with the car and that Brown said it was due to dry shock absorbers; that he would not say that he could tell what was wrong with the car or what caused it to act the way it did the day of the accident; that he took Mr. Brown's word for it as defective shock absorbers. Neither plaintiff nor Ackman examined the shock absorbers or knew anything about their condition. Neither of them could or did testify that the shock absorbers caused the car to act as they claimed it did. On cross-examination Ackman testified that if there were no shock absorbers on the car that would not cause any difficulty in steering the car, and that a dry shock absorber is no worse than having no shock absorber, "just about the same thing"; that the steering apparatus is wholly disconnected from the shock absorbers.

Plaintiff called an automobile mechanic. He testified in substance that shock absorbers, in working condition, in driving over rough roads, would tend to keep the car from teetering up and down and tend to balance the car, hold it straight up in turning to right or left; that if the shock absorbers were dry, in driving over rough roads, that would cause the car to sway around and have a tendency to cause the driver to lose control of the car; and that in making a turn on a smooth road the car would throw to one side. On cross-examination he testified that with dry shock absorbers, if you made a quick turn, the car would go to one side.

As plaintiff recovered a verdict, we are to view the evidence in the light most favorable to him. And if, from the evidence and the reasonable inferences that can be drawn therefrom, the jury could find for the plaintiff on the issues of negligence and proximate cause, then the verdict and judgment should stand. Hence we need not give a detailed statement of the evidence presented by the defendant. Defendant called two automobile mechanics. They testified, in substance, that the shock absorbers have no effect upon the swaying of a car, do not affect the ability of the driver to steer a

car, and have practically no effect in the matter of turning a car. They did say that in making a sharp turn, or, if the car, going at high speed, started to rock, the lack of shock absorbers or their being dry would have some little effect on the swaying and steering of the car.

The rules stated above, as to our consideration of the evidence and as to conditions requiring us to sustain the verdict and judgment in a case of this kind, do not require or permit us to sustain verdicts based on mere speculation and conjecture or where the physical facts demonstrate that the witnesses on whose evidence the verdict rests were mistaken or did not testify truthfully. The burden of proof rested on the plaintiff to prove (a) that the defendant was guilty of negligence, and (b) that such negligence was a proximate cause of the accident causing his injury. If he failed in his proofs on either or both of these issues, then he could not recover. There are a number of rules established by our decisions applicable here.

The verdict cannot be based on mere possibility, speculation, or conjecture. Vardolos v. Phillips Petroleum Co. 188 Minn. 25, 246 N. W. 467; Northwestern P. R. Co. v. Bobo, 290 U. S. 499, 54 S. Ct. 263, 78 L. ed. 462; and long list of cases cited in 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 7047, pp. 1125, 1126, note 72.

No recovery can be had if it is more probable that the accident was produced by some cause for which defendant was not liable. Orth v. St. P. M. & M. Ry. Co. 47 Minn. 384, 50 N. W. 363; Alling v. N. W. Bell Tel. Co. 156 Minn. 60, 194 N. W. 313; Schendel v. C. M. & St. P. Ry. Co. 165 Minn. 223, 206 N. W. 436; Robertson v. C. R. I. & P. Ry. Co. 177 Minn. 303, 225 N. W. 160; C. M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 70 L. ed. 1041.

If an inference of negligence from part of the facts is inconsistent with and repelled by other facts conclusively shown, negligence is not proved. Akerson v. G. N. Ry. Co. 158 Minn. 369, 197 N. W. 842.

A finding of negligence cannot rest on testimony which is clearly inconsistent with admitted or conclusively shown physical facts. Larson v. Swift & Co. 116 Minn. 509, 134 N. W. 122; Davis v. M. & St. L. R. Co. 134 Minn. 369, 159 N. W. 802; Brown v. City of Minneapolis, 136 Minn. 177, 161 N. W. 503; Karras v. G. N. Ry. Co. 167

Minn. 140, 208 N. W. 655; Rasmussen v. George Benz & Sons, 168 Minn. 319, 210 N. W. 75, 212 N. W. 20; Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 215 N. W. 678; Nealis v. C. R. I. & P. Ry. Co. 173 Minn. 587, 218 N. W. 125; Larsen v. N. P. Ry. Co. 175 Minn. 1, 220 N. W. 159.

Proof of causal connection must be something more than consistent with plaintiff's theory of how the accident happened. Schendel v. C. M. & St. P. Ry. Co. 165 Minn. 223, 206 N. W. 436; Alling v. N. W. Bell Tel. Co. 156 Minn. 60, 194 N. W. 313; Miner v. Payne, 150 Minn. 103, 184 N. W. 673; Hurley v. Illinois Cent. R. Co. 133 Minn. 101, 157 N. W. 1005.

The road upon which plaintiff and Ackman were traveling is a state trunk highway with a smooth tarvia surface of ample width for cars to pass each other and with the usual yellow or light stripe in the center to mark the dividing line between the two lanes of travel. The accident happened about 4:30 o'clock in the afternoon. It was raining, and there was water on the windshield which to some extent obscured the vision of the driver. The road at the place of the accident, as far as appears and as indicated on official state highway maps, was straight. There was a slight downgrade. There is no evidence that the road was slippery or that the car skidded. Plaintiff testified that he saw the truck with which they collided when it was about half a block distant. He was traveling about 45 miles an hour. We may conservatively assume that the truck was traveling at least 25 miles an hour. Ackman did not see the truck until it was right in front of them. He said he observed or thought the truck was driving about on the yellow line in the center of the road, that it was a little bit to the right, apparently meaning it was a little bit over on its wrong side of the center line. Plaintiff said he knew he would have to turn off to the side for the truck anyway. He does not say that the truck was over the center line of the road or that he observed that it was. The reasonable inference would be that he was driving somewhat over the center line, hence knew he was required to turn out. He started to turn a "trifle" to get out of the way, and then the car became unruly and he could not hold it or straighten it. Neither Ackman nor plaintiff

testified that the car turned or swayed over to the left so as to collide with the truck. Plaintiff said he did not know just what happened; that either the car ran into the truck or else the truck ran into the car. The truck did not stop. While, as hereinbefore stated, there is some testimony tending to show that dry shock absorbers might cause the car to sway when a turn is made, there is no testimony that this car swayed toward the truck so as to cause the collision. A finding that it did so sway or move toward the truck would have to rest on a very tenuous and uncertain inference. Again, there is no testimony that turning the car a "trifle," as testified by plaintiff, or pulling out "just a little bit," as testified by Ackman, would cause any swaying or swinging of the car on a smooth, straight, hard surface road. It is not necessary to go far afield to ascertain the cause of this accident. Either the car or the truck was over the center line of the road or the driver of the vehicle which was partly in the wrong lane of travel failed to turn out in time to avoid the accident. As soon as the collision occurred the car driven by plaintiff no doubt swayed and swerved out of control.

The time element, not argued here, may nevertheless be referred to. The two vehicles were approaching each other at a rate of some 70 miles an hour. If plaintiff first saw the truck when it was about half a block distant, the vehicles collided in about two seconds thereafter, assuming a block to be about 400 feet in length. There would not be much chance to go through a turning operation or get out of the way in that time. There would not be time for any conversation between the parties, and when Ackman testified that plaintiff said, "I can't hold it," or words to that effect, and "the car went over," he apparently referred to something said after the collision.

The evidence, taken as a whole, is too uncertain and speculative as to what caused this accident. It is more probable that the accident was produced by some cause for which defendant was not liable rather than by any negligence of the defendant. The evidence is insufficient to sustain any finding that the slight turning of the car, as testified to, did or could cause this car to sway or swing to

such an extent as to cause the driver to lose control thereof, or that any swaying of the car caused the collision.

Defendant was entitled to a directed verdict.

The judgment appealed from is reversed and the trial court directed to enter judgment for the defendant.