## GEORGE KARRAS v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 16, 1926.

Nos. 25,258, 25,259.

**Judgment notwithstanding verdict sustained.**

    Upon the facts stated in the opinion it is *held*: That because of the construction and operation of the machinery involved and ·the nature of plaintiff's injury the accident could not have occurred in the way claimed by plaintiff, therefore the trial court properly granted judgment notwithstanding the verdict.

    Judgments, 33 C. J. p. 1185 n. 52.

  [1]Reported in 208 N. W. 655.

Action in the district court for Carlton county to recover for personal injuries. The case was tried before Magney, J., and a jury which returned a verdict in favor of plaintiff. Defendant's motion for judgment notwithstanding the verdict was granted and judgment was entered for defendant. Later the plaintiff moved for a new trial. His motion was denied. He appeals from the judgment and from the order denying his motion for a new trial. Judgment and order affirmed.

*Peter E. Kamuchey* and *George G. Chapin*, for appellant.

*F. G. Dorety, A. L. Janes* and *Baldwin, Baldwin, Holmes & Mayall*, for respondent.

WILSON, C. J.

Plaintiff appealed from a judgment entered notwithstanding a verdict of $4,000. He also appeals from an order denying his motion for a new trial.

Plaintiff was an employe of defendant. He assisted in unloading rails from flat cars. The work was done with a machine which resembled a steam shovel in appearance and operation. It consisted of an engine inclosed in a cab on a flat car and having a steel framework boom about 29 feet long in the end of which was a pulley for the operation of a shovel or dipper. In the instant work a shovel or dipper was not used. An 11-foot wooden extension was added to the steel boom and in the extreme end was a pulley over which was operated a 5/8 inch metal hoisting cable on the end of which were tongs to attach to and lift rails. The other end of the cable was attached to a drum in the cab. This cable passed on and over the top of the pulley in the end of the steel boom which was designed for the purpose above mentioned. In the instant work its presence was unnecessary. It served only as a carrying pulley. The steel boom with its wooden extension was raised and lowered by means of cables attached to a drum in the cab, running over pulleys at the top of the cab and to, over and around pulleys located about four feet from the distant end of the steel boom. In raising the boom the cable traveled from the engine to the lower side of

the pulleys passing around them and over the tops and back to the pulleys at the top of the cab and back to the drum. In lowering the boom it traveled in the opposite direction. When the machine was in use the boom was locked at an angle of about 45 degrees. While it was being so raised plaintiff, while on the right of the machinery facing the pulley end of the extended boom, was injured. When the injury occurred the pulley in the end of the steel boom was apparently from two to three feet from the floor of the car and the other pulleys thereon were about 18 inches higher.

Plaintiff's claim is that the engineer directed him to put the hoisting cable on the pulleys; that he put it on the end pulley when just off the floor and then put it on what we have termed the carrying pulley in the end of the steel boom; that in so doing the engineer started the machine causing the hoisting cable to run over the top of the pulley catching his right hand between the hoisting cable and this pulley; that he used his left hand to aid in releasing his right hand and it too was caught in the same place. He says his screams caused the operator to stop the machine to release him. His version puts the damaging pulley a little to his left immediately before the injury.

The engineer says that plaintiff was injured on the right hand pulley on the steel boom over which a cable was operated as above stated. He claims plaintiff with his right hand took hold of that part of the boom cable going toward the bottom of the pulley and his hand was caught in the pulley necessitating a reversal in the operation of the cable to release him and in the reverse movement plaintiff was further injured on the left hand by having it caught in the tip of the same pulley as the upper part of the cable was going toward the pulley. His version puts the damaging pulley a little to plaintiff's right immediately before the injury. It is easy to see how the wounds resulted if he was injured in this way.

If plaintiff was injured as he claims there is liability. If he was injured as stated by the engineer there is no liability.

In the language of the trial court: "The right hand shows that the fourth finger is off back of the knuckle joint; the third finger is

off at the knuckle joint; the second finger is off just in front of the knuckle joint, and that portion of the palm of the hand is gone on a line drawn where those amputations of the fingers have been made." This left the thumb and index finger on the right hand. On the left hand the flesh was torn from between the thumb and index finger. The injuries were received while plaintiff wore big leather gloves.

We have stated the facts in detail because we are confronted with the inquiry as to whether, considering the construction and operation of the machinery involved and the nature of plaintiff's injury, the accident could have occurred in the way claimed by plaintiff.

The injury to the right hand compels the conclusion that the pulley came in contact first with the little finger side of the hand. The presence of the index finger and thumb after the accident is convincing in this respect. It is claimed, however, that he took hold of the cable from the bottom with the palm of the hand up. How then was the injury given to the left hand? This injury was apparently made by the pulley first coming in contact with the index finger side of the hand. It is doubtful if this was possible on plaintiff's theory. But more forceful and persuasive are the physical facts incident to the construction and operation of the equipment.

Plaintiff claims that he was injured by the hoisting cable at a time when it carried no load. The evidence shows nothing but its own weight. The extended boom was 40 feet long. The pulley where he says he was hurt was 29 feet from the drum and 11 feet from the end pulley. It was serving merely as a carrying pulley. So far as the record shows its top was in a straight line with the top of the end pulley and the place where the hoisting cable touched the drum. The function of this pulley was not that for which it was used. Its presence and use were mere coincidence. Even in service the load on this pulley was comparatively light. But at the time of the injury there was no load. The cable was 5/8 of an inch thick extending the length of the boom with a few feet hanging from the end pulley to the floor of the car on which a portion of the cable with its attachments were lying loose. Such pulleys so used

would not catch and hold the hand. The mechanism and its operation would not permit a holding of the hand. There was nothing to give the loose hoisting cable the necessary force or power to possibly do what the plaintiff says it did.

We think the admitted physical facts incident to the construction and operation of the equipment involved demonstrate that plaintiff did not suffer his injuries in the manner described by him. The flesh and bones being crushed to practically cut off part of the hand covered by a big leather glove, the mutilated hand or arm would pass the pulley as quickly as it met it. We think he must be mistaken.

It follows that the conclusion of the trial court was correct. Larson v. Swift & Co. 116 Minn. 509, 134 N. W. 122; Davis v. M. & St. L. R. Co. 134 Minn. 369, 159 N. W. 802; Chybowski v. Bucyrus Co. 127 Wis. 332, 106 N. W. 833, 7 L. R. A. (N. S.) 357; Musbach v. Wisconsin Chair Co. 108 Wis. 57, 84 N. W. 36. Such consequence might well be expected from a cable and pulley carrying a heavy load such as the one the engineer indicated as doing the harm. The judgment and order are affirmed.

Affirmed.