## CHARLES COLEMAN v. PHILIP L. HUEBENER AND ANOTHER.

### 130 N. W. (2d) 322.

August 21, 1964—No. 39,167.

*Dorfman, Rudquist, Jones & Ramstead* and *Howard S. Marker,* for appellant.

*Murnane, Murnane, Battis & deLambert* and *Charles R. Murnane,* for respondents.

FRANK T. GALLAGHER, C.

This is an appeal from an order of the district court denying plaintiff's motion for a new trial.

The action is to recover for personal injuries sustained by plaintiff as he crossed a street in St. Paul and was struck by defendant Radio Cab Company's taxi.

The pertinent facts are as follows: Plaintiff completed his work at the dining room of the Standard Club in Minneapolis at about 12:45

a. m. on January 3, 1960. He secured a ride to his home at 915 West Central Avenue in St. Paul from Buddy Moore, also employed that night at the club. Plaintiff testified on direct examination that when they reached the approximate vicinity of his home, they were going east on Central Avenue. He said that Moore pulled up to the curb and stopped on the south side of Central Avenue in front of plaintiff's home, which was on the opposite side of the street; that plaintiff got right out on the curb, stepped down, and saw Moore drive down the street. The plaintiff then proceeded to cross the street. Before doing so he said that he looked both directions up and down Central Avenue but saw nothing—no lights of any kind. When asked about the visibility, he said it was a clear night; that there was fresh snow on the ground; and that he could have seen in either direction. He said he could see objects some distance away and that he could see where he was walking; that the street was icy; "where cars had been there and was chunks of ice"; that he wore no overshoes; and that as he crossed the street he had to take his time to keep from falling. After crossing the street and when he was two or three steps from the curb in front of his home, plaintiff said that he heard a motor; that when he turned to look the lights blinded him and he "was hit." He said that from the time he first became aware of the car until he was hit he did not, to his knowledge, make any steps or jumps, and that after he was struck, he was lying at the corner of Milton and Central, but he did not know how he got there. Plaintiff's house was the second house east of the intersection of Milton and Central.

On cross-examination plaintiff testified as follows:

"Q. Was there anything that would have stopped you from seeing the headlights of the car coming westerly on Central had you looked for it when you were in the center of the street and before you crossed the westbound lane?

"A. No, I guess there isn't.

\* \* \* \* \*

"Q. As you crossed, then, from that curb line, the south side of Central to the middle of Central, which way were you looking then?

"A. Straight in front of me.

"Q.   Did you ever look to your right or left during that time?

"A.   After I got out into the street you mean?

"Q.   Yes, sir.

"A.   To my knowledge I couldn't say whether I did or whether I didn't.

"Q.   I beg your pardon?

"A.   I couldn't say if I did or if I didn't. After I got out into the street and was crossing into the street proper it was slick, and I was watching my, you know, trying to get across the street because it was ice out.

"Q.   So you mean you were looking at your own path?

"A.   That's right."

He did not know if, after crossing the center of Central Avenue, he looked to the right or left for traffic.

The defendant Philip L. Huebener, driver of the taxi, testified that Central Avenue at Victoria Street, which is east of the scene of the accident, was dry that night, but it was very slippery at Milton Street. As he approached the scene of the accident from the west, he said that he was driving "under 30 miles an hour," and when he first saw plaintiff, he was going about 20 miles an hour. Just before the accident he said that he was driving in the north half of Central (the right-hand side) toward the center of the roadway, inasmuch as cars were parked on each side of the street; that he saw a double-parked car facing or going east on Central Avenue; that it seemed like it was traveling when he first saw it, then it seemed as though it was stopped; and that as he got up to it it seemed like it started again and "left the scene." Plaintiff said, however, that Moore "never double parked with me getting out of his car on Central Avenue." In any event, Huebener said that he first saw plaintiff as he stepped from behind "that" vehicle, at which time the cab was alongside the car; that as he got past the headlights of the "parked car" he saw plaintiff in the center of the street; that the latter took about two steps and was hit by the left part of the taxi near the headlight and crashed against the windshield; that he was carried to the Milton and Central street sign; and that plaintiff slipped off to the right of the cab when it struck the street sign and a fence.

The witness also testified that after plaintiff struck the windshield his view was blocked so that all he could see was plaintiff's overcoat across the windshield; that all he could do was to work to avoid the cars parked on both sides of the street; and that he was going about 5 miles per hour when his cab struck the street sign. He then struck the fence and came to a stop.

One conflict in the testimony concerned how far away a pedestrian could see an automobile that was approaching from the east on Central Avenue when standing in the street in front of plaintiff's residence. There was testimony that Central Avenue rises 3 feet from Milton to Victoria and then drops 5 feet from Victoria to Fisk Street, which is the next street to the east. Plaintiff testified that a westbound automobile could not be seen until it reached the corner of Victoria Street. Defendant Huebener, the cab driver, stated that the headlights of a westbound automobile disappeared at Fisk Street and then reappeared somewhere between Fisk and Victoria Streets.

At the close of the evidence, the trial court directed a verdict for defendants. The sole issue raised by plaintiff on appeal is whether the evidence adduced at the trial was such that it established his contributory negligence so as to preclude the submission of the issue to the jury. He argues that on the evidence he was not guilty of contributory negligence as a matter of law. He refers to Webster v. St. Paul City Ry. Co. 241 Minn. 515, 64 N. W. (2d) 82, as closely analogous to the instant case. While that case involves an injury to a pedestrian while crossing the street, the circumstances there were different from the facts in the case before us. There plaintiff sued for personal injuries sustained by him when he was struck by defendants' streetcar. The jury returned a verdict for the plaintiff, and defendants appealed from an order denying their alternative motion for a judgment or new trial. At about 10:30 in the evening plaintiff intended to cross from the north to the south side of University Avenue, St. Paul, but chose to do so in the middle of the block. At that point University Avenue was about 98 feet from curb to curb. The center of the avenue was occupied by two sets of streetcar tracks flanked by concrete safety islands running the full length of the block. He walked 36 feet between

the north curb and the north safety island without mishap, then began to cross the area between the safety islands occupied by the streetcar tracks, a distance of about 20 feet. He said that just before he left the north island he looked to his left and right; that when he looked to his right, defendants' streetcar was stopped for a red light signal at the west side of the Kent intersection, about 230 feet from where he was struck. He walked at a normal walking speed and was struck by the streetcar after he had gone about 17 feet. On appeal defendants contended that a verdict should have been directed in their favor since the evidence demonstrated that plaintiff was guilty of contributory negligence as a matter of law and failed to show any negligence on the part of defendants. We held that the failure of the pedestrian crossing a street to look more than once for approaching traffic does not establish his contributory negligence as a matter of law and that his failure to yield the right-of-way while not on a crosswalk was not negligence per se but only prima facie evidence of negligence. We stated that if the situation was as plaintiff claimed in his testimony he was justified in attempting to cross to the other island as he had the right to conduct himself on the assumption that the streetcar would not be operated at a speed greater than was reasonable under the circumstances. The question whether the motorman on defendants' streetcar was negligent in failing to maintain a proper lookout and whether he made a reasonable effort to stop the streetcar after seeing plaintiff on the tracks was also held to be for the jury.

Plaintiff also cites Johnson v. Brastad, 143 Minn. 332, 173 N. W. 668. In that case plaintiff recovered a verdict for injuries caused when he was struck by defendants' truck at a street intersection in Minneapolis. Defendants appealed from a denial of their alternative motion for judgment notwithstanding the verdict or a new trial. It was conceded there that the evidence warranted a finding of negligence on the part of the driver of the truck, but defendants contended that the evidence conclusively showed that the plaintiff was guilty of contributory negligence.

Plaintiff was walking south along the east side of Minnehaha Avenue in Minneapolis early in the evening, and the accident happened as he crossed Franklin Avenue. Double streetcar tracks extended along

both avenues; it was not very dark; and there was an electric light at the intersection. The headlights of the truck were lighted but were quite dim as they were turned on only partially and the lenses had been coated with soap to avoid violating the dimming ordinance. The only testimony concerning plaintiff's conduct was his own. He stated that when he stepped from the curb he first looked toward the east and then the west and saw no streetcars or other vehicles approaching; that he proceeded across Franklin Avenue without again looking either east or west; and that when near the south rail of the south track on that street, he was struck by the truck which came from the west and which he did not see until after he was struck. Defendants insisted that plaintiff's failure to observe the lights on the approaching car when he stepped into the street and his failure to look again while proceeding some 30 feet, coupled with the fact that there was nothing to distract his attention, conclusively showed that he was chargeable with contributory negligence. We held that under all the circumstances the question of whether plaintiff was negligent in failing to look with sufficient care to discover the approaching auto with its dim lights, or in failing to look again before crossing the south track, was one for the jury. The situation there, particularly with reference to the lights of the approaching car, was different from the case at bar where there seems to be no dispute that the approaching lights of the taxi were bright and could have been seen in the dark of night under ordinary circumstances.

The rule is well settled that it is only in the clearest of cases where the facts are undisputed and it is plain that all reasonable persons can draw but one conclusion from them that the question of contributory negligence becomes one of law. A motion for a directed verdict should be granted only where it would be the trial court's duty to set aside a contrary verdict as being manifestly against the entire evidence because reasonable men could draw only one conclusion from it. Webster v. St. Paul City Ry. Co. *supra*; Campion v. City of Rochester, 202 Minn. 136, 277 N. W. 422.

It is our policy to review with careful scrutiny appeals on issues such as the one before us involving a ruling that plaintiff was guilty of contributory negligence as a matter of law. However, the fact situation here

satisfies us that the trial court was justified in deciding as it did. Unfortunate as this accident was, it is difficult under the record here for us to see how the plaintiff, after looking in both directions before leaving the south curb, could have failed to observe the lights of the approaching taxi. Even viewing the testimony in the light most favorable to the plaintiff and accepting his statement that he did not come out from behind the parked Moore car but rather that it had pulled away, it still seems that if plaintiff had exercised ordinary care he should have observed, seen, or heard the taxi as it approached. It is our opinion under the facts and circumstances here that the trial court should be affirmed. The Webster case is distinguished.

Affirmed.