LOUIS C. JOHNSON AND ANOTHER v. HENRY MOORE.

146 N. W. (2d) 599.

November 18, 1966—Nos. 39,995, 39,996.

*Robins, Davis & Lyons, Paul W. Urbanek,* and *Dale I. Larson,* for appellants.

*Field, Arveson, Donoho & Lundeen* and *Thomas S. Donoho,* for respondent.

NELSON, JUSTICE.

Plaintiffs appeal from an order denying their motion for a new trial upon all issues and from the judgment entered pursuant to a directed

verdict in favor of defendant in this personal injury action. The directed verdict was based upon the trial court's determination that defendant was not negligent and that plaintiff Louis Johnson (hereinafter referred to as plaintiff) was guilty of contributory negligence as a matter of law.

The essential facts are, for the most part, undisputed. The accident occurred on Court Street in Fergus Falls, Minnesota, between 4 and 4:30 p. m. on March 29, 1960. Court Street is a 2-lane, surfaced public street, about 50 feet wide, in the business district of Fergus Falls and runs in a north-south direction. The scene of the accident was at or near the south end of the bridge over which Court Street crosses the Otter Tail River. The bridge is located about midway between Court Street's intersections with Washington Avenue on the south and Lincoln Avenue on the north.

On the east side of Court Street and just north of the bridge is located the Minnesota Motors building where plaintiff, then 71 years of age, was employed. At the south end of the bridge on the east side of Court Street is located a sign with an arrowhead pointing at the Chamber of Commerce office, which is on the west side of Court Street and immediately south of the bridge. Immediately south of that office is the Minnesota Motors used-car lot with a small office thereon, and immediately south of the used-car lot is a brick building which at the time of the accident contained a cafe. There was no marked crosswalk for pedestrians at or near the south end of the Court Street bridge at the time of the accident.[1]

The day had been gray and overcast. Rain had fallen off and on, but

---

[1] Minn. St. 169.21, subd. 3, provides: "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.

\* \* \* \* \*

"Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and give warning by sounding the horn when necessary and exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

it was not raining and there were no atmospheric conditions hampering visibility at the time of the accident. Headlights were not required.

Plaintiff left the Minnesota Motors building and walked south on the sidewalk along the east side of Court Street and across the bridge to a point just north of the Chamber of Commerce sign on the east side of Court Street, from which point he started to cross the street diagonally southwesterly toward the cafe, where he intended to have a cup of coffee. He claims he was in the center of the street when defendant's automobile struck him.

Defendant, an automobile salesman for Wormer Rambler of Fergus Falls, had been out in the Fergus Falls countryside since early morning trying to sell cars. Because of the intermittent rainfall during the day his car had become covered with a film of mud and dirt. The vehicle was a new 1960 Rambler station wagon in good mechanical condition and equipped with outside rearview mirrors mounted on the right and left front door posts. According to defendant's testimony he returned to Fergus Falls about 4 p. m., stopped at his employer's garage, and thereafter proceeded westerly on Washington Avenue to its intersection with Court Street. He stopped at the arterial stop sign at this intersection and then turned north on Court Street. After stopping he shifted gears while proceeding northerly, attaining a maximum speed of between 20 and 25 miles per hour. At a point 20 or 30 feet north of the Washington-Court intersection, he noticed a pedestrian walking south on the sidewalk on the east side of Court Street a little to the south of the Minnesota Motors building. He paid no more attention to the pedestrian since the latter was merely walking on the sidewalk. Defendant continued to proceed northerly, watching the street ahead of him. Nothing interfered with his vision, he was not distracted by anything, and at no time did he see a pedestrian in the street ahead of him within the range of his vision. The first he knew of any unusual occurrence was when he heard a "thump" on the right side of his automobile. He then applied his brakes and stopped. He at no time changed the direction of his automobile while proceeding ahead on his side of the street. He had no feeling of having run over anyone since he encountered no bump and the equilibrium of his car remained the same.

At the time of the accident an independent witness, Stephen Winter, was standing in the Chamber of Commerce office, practically opposite the scene of the accident. Just before it occurred he was looking out the window, a large store-front window providing clear vision of Court Street, and observed the plaintiff directly across the street. Winter turned momentarily to speak to a secretary in the office, heard a thud, looked back, and immediately went to the scene of the accident. His impression was that the car had stopped suddenly. He said that the car was about half a car length ahead of plaintiff who was either kneeling or sitting in the street, facing west and closer to the curb from which he had stepped into the street than to its center. Winter noticed that plaintiff's hands were covered with mud. Winter returned to the Chamber of Commerce office, but went back to the scene a short time later after the police arrived and before defendant's car had been moved. He then observed on the right hand or passenger side of defendant's automobile some marks which he described:

"Just like if your car was dirty, somebody took and pushed something along the side of it—like if you have any children, once in a while you see a hand go across like that."

These marks, according to Winter, did not begin forward of the right front door post of defendant's car, although he was not certain exactly where they were. There were no other marks, broken glass, dents, or scratches on the car.

The car was in the middle of the northbound lane of traffic, plaintiff being closer to the east curb of the street than the car was. According to the testimony of those present immediately following the accident, plaintiff's apparent injuries were mostly to his face, and he was told not to wipe his face with his hands because his hands were muddy.

Other witnesses observed smudge marks on the right-hand side of defendant's vehicle along the right front door, and one observed that the outside rearview mirror on the right front door post—projecting out on the side where plaintiff was found lying in the street—was tipped or tilted. Eleven feet of skid marks extended from the rear of defendant's car.

Clem Kniss, working in the office of Minnesota Motors' used-car lot,

looked up from a paper after the accident and observed plaintiff lying in the street, 3 or 4 feet from the east curb, "flat down," with his head to the north and his broken glasses lying in the street. Kniss observed defendant's car stopped not more than 5 or 6 feet north of where plaintiff was lying, possibly 5 or 6 feet west of the east curb. This witness went down to the street, helped plaintiff to his feet, and helped to escort him to the used-car lot's office.

As plaintiff recollected the accident, before beginning to cross the street he looked to his left and saw an automobile on Washington Avenue just about at the intersection of Court Street, a distance of 202 feet south from where the plaintiff was standing, and also saw 3 cars in the southbound lane. He stepped into the street, planning to stop in its center, and proceeded to a point "just short" of the center of Court Street when he was "struck down."

The record is clear that plaintiff had been in the habit of crossing Court Street between intersections at about the location where the accident occurred. His testimony is that when he went across Court Street he intended to go to the coffee shop on the other side and to pick up some supplies and return to the shop where he was employed. The point where he started to cross the street was across from the Chamber of Commerce building. It appears that he left the end of the sidewalk where it goes across the bridge. Asked whether he had ever crossed the street at this point before, he answered, "Thousands of times; with wheel barrows and rakes; and everything else." Plaintiff testified as follows on direct:

"Q. As you continued to walk from the curbing into the street, in which direction were you looking?

"A. I was looking west; first—then I turned to look at the car, and that was coming around the corner, and I only seen two cars pass me.

"Q. You turned and looked to your right?

"A. Yes.

"Q. And you saw these three cars you've described?

"A. Yes.

"Q. Did any of them pass in front of you?

"A. The two of them passed me.

"Q. Two passed you?

"A. But I didn't see the third one pass.

"Q. In which direction were you walking; how were you crossing the street?

"A. I was walking west across the street.

"Q. Were you walking in a straight line across?

"A. Not quite; I looked at it today; I was about four feet off the line where it's marked today.

"Q. So, in other words, you were walking somewhat at an angle?

"A. Just a little bit.

"Q. Which would be somewhat of an angle, then, to the southwest?

"A. Yes.

"Q. Did you, at any time, after looking to your left and observing the car that you've described, did you at any time after that look again to your left?

"A. No, I didn't.

"Q. Did you, at any time after you stepped off the curb and started crossing, stop in the street?

"A. Well, I think I kept on.

"MR. DONOHO [counsel for defendant]: * * * May I ask a question or two with reference to the question asked and the answer he's about to give; if I can ask the question, I think it will be self-explanatory.

"JUDGE WILSON: You may.

"MR. DONOHO: Mr. Johnson, following this accident, you had no memory of events immediately prior to the accident?

"A. No.

"MR. DONOHO: And the answer you're about to give from the time you stepped off the curb is something you have reconstructed?

"A. I knew where I was going, and I looked to my right before I got to the center; and after I stepped off the sidewalk I looked to my right; and I figured on stopping before I got to the center.

"MR. DONOHO: But what happened after that you don't have any recollection?

"A. I don't have any recollection at all.

"MR. DONOHO: All right.

"Q.   All right; as far as you recollect, you continued walking across the street until you were struck?

"A.   Yes.

"Q.   Did you observe the car that hit you?

"A.   No; I don't know today; I don't know today what hit me at all.

"Q.   How far had you gotten across the street at the time you were struck?

"MR. DONOHO: Just a moment; in view of the previous testimony, he had no memory regarding this.

"JUDGE WILSON: Sustained.

"Q.   As you sit in the witness stand today, Mr. Johnson, do you have a recollection as to how far you got across the street?

"A.   No, I don't.

"Q.   You don't know how far you got across the street?

"A.   No; but I was figuring on stopping before I got to the center so the three cars would pass me is all.

\* \* \* \* \*

"Q.   Do you remember anything that took place at the scene of the accident at all; by way of conversation or who was there or—

"A.   No.

\* \* \* \* \*

"Q.   Were you experiencing pain in any parts of your body in the hospital there?

"A.   A little bit, yes.

"Q.   Where?

"A.   In my head.

\* \* \* \* \*

"Q.   How long were you in the hospital?

"A.   In Fergus, I was here about seven and a half days, I think.

\* \* \* \* \*

"Q.   Did you have any marks of injury on your person?

"A.   Just my head; then I had a black eye on both sides, clear down to my cheek.

"Q. Did you have any signs of injury on any other parts of your body?

"A. No."

The doctor who treated plaintiff at the hospital testified that Johnson had temporal abrasions on both sides of his head and a black left eye and that he developed symptoms of a disturbance on the left side of his brain, which was corrected by surgery. These facts give rise to inferences that plaintiff was struck by, or walked into, the mirror on the right side of defendant's vehicle as it passed in front of him and that, upon falling to the pavement, his hands rubbed against the right front door.

The trial court held that plaintiff was contributorily negligent as a matter of law. The trial court also ruled that defendant was not negligent, as a matter of law. Plaintiffs assign the foregoing rulings of the trial court as error. They also assign as error the court's refusal to receive into evidence the testimony of a police officer, offered after plaintiffs had rested on the issue of liability, involving certain measurements of the street and the bridge in the vicinity of the accident.

Plaintiffs contend that they were denied the constitutional right to have the merits of plaintiff Johnson's claim determined by a jury, citing Webster v. St. Paul City Ry. Co. 241 Minn. 515, 64 N. W. (2d) 82, as a controlling case. They argue that the trial court acted upon an erroneous basis when it held that the evidence conclusively proved contributory negligence on the part of plaintiff and no actionable negligence on the part of defendant. They concede that there were no eyewitnesses to the accident to provide direct evidence on the actions or inactions of either party and that what actually happened must be inferred from the physical facts, which they contend are obviously indecisive. The trial court, however, was of the opinion that the undisputed physical facts and the nature of plaintiff's injuries combined to negate the possibility of imposing liability upon defendant. See, Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404.

It is well established that it is the duty of a trial court in a civil action to direct the jury to return a verdict for either party when it would obviously be the court's duty to set aside a verdict against that party. See, 19 Dunnell, Dig. (3 ed.) § 9764, and cases cited under note

14. If the evidence as a whole so overwhelmingly preponderates in favor of a party as to leave no doubt as to the factual truth, he is entitled to a directed verdict as a matter of law even though there is some evidence which, if standing alone, would justify a verdict to the contrary. Kath v. Kath, 238 Minn. 120, 55 N. W. (2d) 691; 19 Dunnell, Dig. (3 ed.) § 9764, and cases cited under note 17. We have further said that where the admitted or conclusively proved physical facts of a case demonstrate to a certainty the total failure of the testimony upon which the plaintiff's case depends, or the falsity thereof, a verdict should be directed for the defendant.[2]

■  Thus, while the party making a motion for a directed verdict admits the truth of the evidence and the inferences drawn therefrom most favorable to the adverse party, the moving party does not admit the truth of testimony which is absolutely impossible, either physically or morally, nor of evidence offered by the adverse party which is so unreasonable and inconsistent and so opposed by undisputed evidence as to be wholly incredible. Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243; 19 Dunnell, Dig. (3 ed.) § 9764.

■  The above rules have been applied by this court since its earliest days[3] and violate no constitutional rights, as claimed by plaintiffs.[4] Their application in this case is required since a careful reading of the record clearly establishes that plaintiff's claim must be disregarded as incredible because of inconsistency with the physical facts and the nature of plaintiff's injuries.[5]

It is our view that the testimony of defendant and the independent

---

[2] Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404; Karras v. G. N. Ry. Co. 167 Minn. 140, 208 N. W. 655; Larsen v. N. P. Ry. Co. 185 Minn. 313, 241 N. W. 312; Larson v. Swift & Co. 116 Minn. 509, 134 N. W. 122; 19 Dunnell, Dig. (3 ed.) § 9764.

[3] Abbett v. Chicago, M. & St. P. Ry. Co. 30 Minn. 482, 16 N. W. 266; Thompson v. Pioneer-Press Co. 37 Minn. 285, 33 N. W. 856; Giermann v. St. Paul, M. & M. Ry. Co. 42 Minn. 5, 43 N. W. 483.

[4] Pennsylvania R. Co. v. Chamberlain, 288 U. S. 333, 53 S. Ct. 391, 77 L. ed. 819.

[5] Larson v. Swift & Co. *supra;* Karras v. G. N. Ry. Co. *supra;* Larsen v. N. P. Ry. Co. *supra.*

witnesses Winter and Kniss are so thoroughly corroborated by every detail of the physical evidence as to permit no other conclusion than that plaintiff blindly walked into the side of defendant's automobile as it was passing. In that connection we refer to the confusing testimony of plaintiff himself, which we have set forth in detail in its most important aspects. His testimony that he walked just about to the centerline of the street is inconsistent with his earlier admission that he did not remember how far into the street he had gone; with the physical facts; and with the nature of his injuries. We think, therefore, that the evidence so overwhelmingly preponderates in favor of the conclusion that plaintiff left his position of safety, not at the crosswalk, but at the east curb of Court Street and walked some 6 feet blindly into the side of defendant's passing automobile as to require the determination that he was guilty of contributory negligence as a matter of law.

We said in Provinsal v. Peterson, 141 Minn. 122, 169 N. W. 481, where plaintiff walked directly into a moving automobile, that under the circumstances of that case it seemed clear that the speed of the automobile had nothing to do with the accident. There is no claim that it did in the instant case nor was any testimony submitted to indicate an excessive speed on the part of defendant. The record is clear that if plaintiff saw defendant's automobile it was while he was on the sidewalk. After he stepped off the curb and entered Court Street, he did so without yielding the right-of-way or observing defendant's approach. Under those circumstances it can hardly be said that the speed defendant's car was traveling could have deceived or misled him. The only solution presented by the record is that plaintiff negligently walked into the side of defendant's car and got hurt. The analysis made by Mr. Chief Justice Brown in Provinsal v. Peterson, 141 Minn. 122, 123, 169 N. W. 481, 482, applies here:

"* * * [W]e are clear that the learned trial court correctly held as a matter of law that no actionable negligence was shown. A verdict was therefore properly directed for defendant.

"* * * It seems clear that the speed of the automobile had nothing to do with the accident. Plaintiff did not see it approaching, and the

speed thereof in no way could have deceived or misled him. He walked into the car and got hurt, and that is all there is to the situation."

See, Bowers v. Colonial Warehouse Co. 153 Minn. 425, 190 N. W. 609; 3 Blashfield, Automobile Law and Practice (3 ed.) § 141.49; Pomeroy v. Dykema, 256 Mich. 100, 239 N. W. 342.

We have carefully considered the decision in Webster v. St. Paul City Ry. Co. *supra,* which involved a pedestrian injured by a streetcar. The facts in the Webster case do not compel a similar holding here. The Webster case was distinguished by its writer in the recent case of Coleman v. Huebener, 269 Minn. 198, 203, 130 N. W. (2d) 322, 325. There this court again said, as we did in Webster, that "it is only in the clearest of cases where the facts are undisputed and it is plain that all reasonable persons can draw but one conclusion from them that the question of contributory negligence becomes one of law"; we went on to hold that upon the facts in the Coleman case the question of plaintiff's contributory negligence was one of law, saying:

"It is our policy to review with careful scrutiny appeals on issues such as the one before us involving a ruling that plaintiff was guilty of contributory negligence as a matter of law. However, the fact situation here satisfies us that the trial court was justified in deciding as it did. Unfortunate as this accident was, it is difficult under the record here for us to see how the plaintiff, after looking in both directions before leaving the south curb, could have failed to observe the lights of the approaching taxi. Even viewing the testimony in the light most favorable to the plaintiff and accepting his statement that he did not come out from behind the parked Moore car but rather that it had pulled away, it still seems that if plaintiff had exercised ordinary care he should have observed, seen, or heard the taxi as it approached. It is our opinion under the facts and circumstances here that the trial court should be affirmed. The Webster case is distinguished."

■ We have carefully considered the record in connection with plaintiffs' offer, made after they had rested with respect to liability, of the testimony of Sergeant Alfred Meyer of the Fergus Falls Police Department concerning measurements he had made of Court Street and the

bridge. The offer was made after a recess which had been granted only for the purpose of permitting plaintiffs to obtain the testimony of a medical witness. During the recess Officer Meyer made the measurements at the request of plaintiffs' counsel, who made an offer of proof with respect to them before the medical testimony was presented. The trial court, upon objection by defendant's counsel, denied the offer of proof on the grounds that it was not timely. We are unable to see from our consideration of the record how Officer Meyer's testimony as to any of the measurements offered could in any way affect the conclusion which the court reached. It did not, therefore, in any sense constitute newly discovered evidence at the last stages of the trial. The measurements of themselves could not contribute anything to the crucial issue of where defendant's car was at the time plaintiff stepped off the curb. A complete set of photographs of the area had been introduced previously which more graphically portray the scene of the accident than would the measurements made by Sergeant Meyer. (As a witness he had already estimated the width of Court Street at 50 feet.) Under the circumstances there was no abuse of discretion on the part of the trial court in denying the offer at the stage of the proceedings disclosed by the record.

We reach the conclusion that the trial court correctly denied plaintiffs' motion for a new trial. The judgment entered pursuant to the directed verdict is affirmed.

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that the issues of negligence and contributory negligence were for the jury.