PAMELA E. TSCHANNEN, A MINOR, BY
KENNETH B. TSCHANNEN, HER FATHER AND
NATURAL GUARDIAN, AND ANOTHER v.
LEO JOHN HILLSHEIM.

178 N.W. (2d) 878.

June 30, 1970—No. 41683.

*Schermer, Gensler, Schwappach, Borkon & Ramstead* and *John H. Ramstead,* for appellant.

*Haugen, Quello & Phleger* and *Marlon O. Haugen,* for respondents.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Frank T. Gallagher, JJ.

SHERAN, JUSTICE.

Appeal from an order of the district court denying defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial. Cross-appeal by plaintiffs from an order of the district court denying the motion of Pamela Tschannen to amend her complaint.

On March 4, 1966, at approximately 5:30 p. m., an automobile owned and operated by defendant, Leo Hillsheim, westbound on 36th Avenue North in Crystal, Minnesota, collided with Pamela E. Tschannen, 10 years of age, as she moved on foot northerly across that street at or near the west line of its intersection with Douglas Drive. An action was instituted by plaintiffs to recover for the personal injuries sustained and the medical expenses incurred as a consequence. The prayer for relief for the minor was in the amount of $10,000; and for the father, $3,000 was claimed as medical and hospital expense.

The case was tried before the Honorable Thomas Tallakson

and a jury in the District Court of Hennepin County commencing July 30, 1968. After the final arguments were completed, plaintiffs' attorney moved that the prayer for relief in the minor's action be increased from $10,000 to $20,000. Defendant opposed the motion upon the ground, among others, that an applicable policy of liability insurance had a maximum coverage in the amount of $10,000. The trial judge in submitting the case to the jury, gave this instruction over objection of defendant:

"* * * There has been testimony in this case that at the time of this occurrence or accident there was a pedestrian crosswalk marked or painted on the surface of 36th Avenue North running north and south on the west side of the intersection. You will have to decide * * * whether or not at the time of this occurrence or accident there was such a marked or painted crosswalk on this intersection at the place involved in this case. If you find there was such a marked crosswalk, then the following provisions of the Minnesota Highway Traffic Regulation Act[1] * * * would apply: Where traffic control signals are not in place or in operation * * * the driver of a vehicle shall yield the right-of-way, slowing down or stopping, if need be, to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. * * * A crosswalk has been defined in this Minnesota Highway Traffic Regulation Act[2] as follows: Crosswalk means any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface. If you find * * * that there was no marked crosswalk * * * or that if there was such a marked

---

[1] Minn. St. 169.21, subd. 2.
[2] Minn. St. 169.01, subd. 37.

crosswalk, that Pamela was not within the crosswalk when struck, then other provisions of the Minnesota Traffic Regulation Act * * * would apply, as follows:[3] It is the law that every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway. * * * [T]*here's no unmarked crosswalk in this case.*"[4] (Italics supplied.)

In any event, the trial judge continued, the Minnesota Highway Traffic Regulation Act[5] requires that:

"* * * [E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and give warning by sounding the horn when necessary and exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway."

The jury returned a verdict on behalf of the minor in the amount of $15,000 and on behalf of her father for medical and hospital expenses in the amount of $1,800.

By post-trial motion, defendant attacked the verdict, claiming that the instruction with respect to a marked crosswalk was error in that there was no evidence upon which the jury could find the existence of such a crosswalk and asserting that the verdict was excessive.

In rejecting the first of these claims, Judge Tallakson wrote in his memorandum:

"* * * There was evidence submitted by the defendant that there was no marked crosswalk at the time of the accident, but there were no official records kept in that regard until * * * after the accident."

---

[3] Minn. St. 169.21, subd. 3.

[4] The italicized portion of the instruction is not contested.

[5] Minn. St. 169.21, subd. 3.

As to the claim that the verdict was excessive, he explained:

"* * * The question of amount allowed by the Jury to the minor Pamela E. Tschannen centered pretty much on a scar she continues to have on her upper thigh [from] the removal of a growth. There was serious medical dispute as to whether or not the growth involved was in fact caused by the accident. The Jury apparently resolved this in favor of the minor. It does appear from seeing the scar and its location that the Jury was liberal in the award made to her for all of her injuries, including the said scar. Rather than the Court considering a remittitur in this matter, it seems that the situation is more fairly resolved [by] * * * denying plaintiffs' motion * * * for an amendment of the ad damnum clause."

Upon appeal by defendant, it is contended in this court that the evidence was overwhelming that there was no crosswalk at the accident intersection and for this reason it was error to submit this fact question to the jury. It is also claimed that the verdict of $15,000 in favor of Pamela E. Tschannen, even though reduced, in effect, to $10,000, is excessive. Respondents argue that it was error for the trial court to have denied their motion to amend the prayer for relief in the Pamela Tschannen case.

■ The testimony of plaintiff Kenneth B. Tschannen with respect to the existence of a painted crosswalk in the intersection was sufficient to make an issue for the jury on this question of fact. The testimony offered by defendant was not adequate to rebut Mr. Tschannen's testimony as a matter of law even though he was an interested witness.

Kenneth B. Tschannen, 44 years of age and employed as a buyer for the International Milling Company for 18 years, testified that he, his wife, and 3 children had lived at 3845 Douglas Drive on the west side of that street about 2 blocks north of the accident site, for approximately 6 months before the accident occurred. On many occasions during this interval, he had walked from his home to Reed's Drug Store, which is located at the

southwest corner of the intersection. These occasions included a number of times just before March 4, 1966, the date when the accident happened. This testimony appears with respect to the west side of the intersection:

"Q. Do you recall seeing any crosswalks painted or marked on the street?

"A. Yes.

"Q. And were they white lines, as you described them?

"A. Yes. They had two lines here. * * * They had a lot of wear * * * there's a lot of sand put in these locations to keep people from sliding into the intersection. So these white marks * * * would show wear, [so] that you could hardly see them in the middle * * *. But I will go on record that at that time you couldn't see the white lines in this immediate center area, but you could see it on the edges. Yes, I did take note of that."

These questions and answers appear on cross examination:

"Q. Mr. Tschannen, are you absolutely certain that the crosswalk was painted in white paint on the pavement at the time of the accident?

"A. I do.

* * * * *

"Q. Irrespective of any conversation you had with anyone else—

"A. I say I did see the white line many times when I walked across there.

"Q. At the time of the accident or before?

"A. * * * I don't remember at the time of the accident.

"Q. Well, before?

"A. That's correct."

Another witness called in behalf of plaintiff, Walter Bassett, Jr., a Crystal police officer, could not recall whether there was a marked crosswalk at the intersection on the date of the accident. This question and his answer appear in the record:

"Q. Now, at the time of this accident do you recall any pedestrian [crosswalk] marked—painted on the street?

"A. Not to my recollection."

In an effort to counteract the testimony of Mr. Tschannen, defendant called as a witness Mr. Roy Wieneke, street superintendent of the city of Crystal. He had worked as an employee for the city's street department for a number of years before the summer of 1965, when he was made street superintendent. As superintendent, he had jurisdiction over the painting of crosswalks on surfaces of the various streets in the city, a responsibility which had commenced only shortly before the accident occurred. Over objection by plaintiffs made upon the ground of lack of foundation, he was permitted to testify of his own "knowledge" that there were no painted crosswalks on the surface of 36th Avenue North on the west side of Douglas Drive on March 4, 1966. Asked to explain the basis of this "knowledge" upon cross-examination, he testified:

"To place crosswalks on a street * * * involves measuring and striking out portions with a chalk line as to where these chalk marks are to be placed. The man that I assign to this job came to work for us * * * in March of '67, and in talking to him and his helper, he remembered definitely that this is one of the first streets that he placed the crosswalks on; and the reason why he remembers is because we had to measure it out and we had to chalk line it. The reason why I say 'chalk line it' is because had there been previous marks on there, they do show and it's a very simple job to replace them again."

In addition to the testimony of Mr. Wieneke, we have in the case three pictures of the intersection, one taken with camera facing in a westerly direction on 36th Avenue North, and two with the camera facing in an easterly direction on 36th Avenue North. No crosswalk is observable in these pictures.

While we recognize the fact that the testimony of an interested witness such as that given in this case by Mr. Tschannen may

be nullified in a proper case by official records or the certain testimony of disinterested witnesses who have made precise observations personally,[6] we do not believe that this is such a case, for these reasons:

(1) While Mr. Roy Wieneke was the street superintendent of the city of Crystal for about 6 months before the accident, with jurisdiction over the placement of crosswalk markings, it is entirely possible that the markings in this crosswalk could have been placed there before his duties as street superintendent commenced and without his knowledge. We cannot accede to the proposition that a street superintendent in a suburban area such as the city of Crystal necessarily carries in his mind the exact location of every marked crosswalk in the jurisdiction he serves.

(2) There was no attempt to reinforce or corroborate Mr. Wieneke's testimony by records kept by the city with respect to the installation of crossings or markings. If such records were made and preserved, it would have been a simple matter for the defendant to produce them at the trial. If no such records were in existence, the observations of Mr. Wieneke made at a trial conducted 2 years after the date of the accident could not be considered conclusive on the question.

(3) The source of the "knowledge" of Mr. Wieneke included hearsay observations of an employee who did not begin working for the city of Crystal until a year after the accident happened.

The pictures which were introduced in evidence are not conclusive for these reasons:

No evidence was developed in introducing them in evidence other than this question and answer appearing in defendant's testimony:

---

[6] See, Johnson v. Moore, 275 Minn. 292, 146 N. W. (2d) 599; Kath v. Kath, 238 Minn. 120, 55 N. W. (2d) 691; Reiter v. Porter, 216 Minn. 479, 13 N. W. (2d) 372; Larsen v. N. P. Ry. Co. 185 Minn. 313, 241 N. W. 312; Larson v. Swift & Co. 116 Minn. 509, 134 N. W. 122.

"Q. And do they accurately show the things that are included in the photographs as they were right after the accident?

"A. Yes."

It is true that defendant testified that he lived in the vicinity of the intersection and that he had never observed a marked crosswalk where the accident occurred. But even coupling this testimony with his general statement about the pictures, we do not have conclusive demonstration of the absence of a painted crosswalk. There is no showing that these pictures were taken for the purpose of disclosing the presence or absence of a crosswalk. There is no testimony that the pictures would have disclosed a crosswalk had it been there. None of the pictures shows the southwest corner of the intersection at the place where Pamela Tschannen started to cross 36th Avenue North from south to north just before the accident occurred. These considerations in combination lead us to the conclusion that the trial court properly submitted to the jury the question of whether a crosswalk did in fact exist at the intersection, as claimed by plaintiff, on the date of the accident.

■ In our judgment defendant's claim that the sum of $10,000 was an excessive award for the personal injuries sustained by Pamela Tschannen as a result of the accident is without merit. She sustained a fractured pubis requiring hospitalization and resulting in a limitation of her physical activities even though the fracture healed in good alignment without unusual complications. Blood was observed in the urine at the time of post-accident clinical examination, evidencing injury to the bladder or kidneys. Cuts on her face left some residual scarring. Most significantly, the jury could have concluded that this accident caused a subcutaneous deposit in her right thigh which was removed surgically leaving a permanent scar. For these injuries, an award in the amount of $10,000 is not excessive.

■ Under the circumstances recited in the body of this opinion, it is clear to us that the trial court was justified in refusing to grant plaintiffs' motion to amend the prayer for relief

474

in the Pamela Tschannen case. See, Stephenson v. F. W. Woolworth Co. 277 Minn. 190, 152 N. W. (2d) 138, and cases cited in 13 Minn. Dig., Pleading, Key No. 236.

Affirmed.

OTIS, JUSTICE (dissenting).

I cannot agree that the bald statement of the plaintiff, unsupported by any evidence whatever, that his daughter was in a marked crosswalk, should permit recovery in the face of overwhelming evidence to the contrary.

Officer Bassett, who was called to the scene of the accident, testified as follows:

"Q. Now, at the time of this accident do you recall seeing any pedestrian [crosswalk] marked—painted on the street?

"A. Not to my recollection."

Nevertheless, he made a thorough investigation of the scene of the accident and took notes and measurements from which he testified.

William Krahn, a witness to the events following the accident, testified as follows:

"Q. Mr. Krahn, there was no crosswalk marked or painted on the surface of the street at that time; is that not true?

"A. I—I—I do not recall, but I don't believe so. I don't recall.

"Q. You don't know?

"A. I do not know. I don't know."

Defendant Hillsheim, who lived a block west of the intersection, testified unequivocally that there were no white lines painted on the street or crosswalk.

More significant was the testimony of Roy Wieneke, street superintendent of the city of Crystal, whose official duties, among other things, included responsibility for painting crosswalks. He testified as follows:

"Q. Again, do you know of your own knowledge whether or not there were any crosswalks marked anywhere on that corner?

"A. There were not.

"Q. As I understand it, Mr. Wieneke, in your department you don't keep any particular record of the dates on which crosswalks are painted; is that correct?

"A. That is correct.

"Q. Can you tell us how it is that you do know that there were no crosswalks at that intersection back in March of 1966?

"A. To place crosswalks on a street, this involves measuring and striking out portions with a chalk line as to where these chalk marks are to be placed. The man that I assign to this job came to work for us in March—when I speak of us, the City of Crystal—in March of '67, and in talking to him and his helper, he remembers definitely that this is one of the first streets that he placed the crosswalks on; and the reason why he remembered is because we had to measure it out and we had to chalk line it. The reason why I say 'chalk line it' is because had there been previous marks on there, they do show and it's a very simple job to replace them again.

"Q. So there were cross marks, crosswalks painted on the street sometime in 1967?

"A. I would say about the middle of the year, '67."

What is equally convincing to me is the fact that the injured child, Pamela, her brother, Cam, and her mother, Ila Tschannen, all took the stand. Not one of them testified that there was a marked crosswalk where Pamela was injured although all of them lived within walking distance of the scene of the accident.

Perhaps the most persuasive evidence on this issue are the pictures themselves. In my opinion, they conclusively demonstrate the absence of a marked crosswalk.

Plaintiff had the burden of proving by a fair preponderance of the evidence that she had the right-of-way because she was on a marked crosswalk. I would hold as a matter of law that she has failed to sustain that burden and would, at the very least, remand for a new trial. It seems to me that on this vital issue

there were available to plaintiff any number of witnesses who lived at that intersection, including the druggist on the corner. It flies in the face of all reason to assume that if a marked crosswalk actually existed none of the available witnesses would be summoned to testify to that fact.